319 P.3d 1105

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Michael W. BASHAM, Petitioner/Defendant–Appellant,**

and

**Aliikea Basham, aka Aliikea I. Basham, Petitioner/Defendant.**

**No. SCWC–11–0000758.**

Supreme Court of Hawai'i.

Feb. 6, 2014.

As Corrected Feb. 11, 2014.

---

Summer M.M. Kupau for petitioner.

ACOBA, McKENNA, and POLLACK, JJ., with NAKAYAMA, J., DISSENTING, with whom RECKTENWALD, C.J. joins.

Opinion of the Court by POLLACK, J.

Petitioner/Defendant–Appellant Michael W. Basham (Basham) appeals from the January 31, 2013 Judgment on Appeal of the Intermediate Court of Appeals (ICA), affirming the June 14, 2011 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit (circuit court). This appeal raises the issue of whether a prosecutor in closing argument may orally provide definitions to key terms in a critical jury instruction, thereby modifying the instructions read to the jury. For the reasons set forth herein, we vacate the ICA and circuit court judgments and remand for a new trial.

I.

On April 28, 2010, Respondent/Plaintiff–Appellee State of Hawaiʻi (State) indicted Basham and his son, Aliikea Basham (Aliikea), upon a charge of assault in the first degree under Hawaiʻi Revised Statutes (HRS) § 707–710.[1] The State alleged that on September 22, 2007, Basham and Aliikea (collectively, "Defendants") intentionally or knowingly caused serious bodily injury to Steven Bloom (Bloom).

Defendants' jury trial commenced in circuit court on June 6, 2011.[2]

A.

The State's witnesses testified to the following facts.

On September 22, 2007, Bloom and his wife, Jennifer Chavez (Chavez) were driving in the Ewa Beach area, where they had recently purchased a house. Bloom was driving their car, a white Saturn. As they were driving in search of a beach, they were involved in a minor motor vehicle collision with a blue car, which hit the back of their

---

1. HRS § 707–710 (1993) provides: "(1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person. (2) Assault in the first degree is a class B felony."

2. The Honorable Randal K.O. Lee presided.

car. Neither Bloom nor Chavez was injured in the accident.

Both cars then pulled off to the side of the road. Bloom got out and approached the driver of the blue car (Driver),[3] confirmed that Driver was uninjured, and suggested that they exchange insurance information. Driver responded that he had to call his father.

Bloom returned to his car to retrieve his insurance card. As he walked back towards the blue car, he saw a man, whom he later identified as Aliikea, come running up from the beach. Bloom testified that when Aliikea arrived at the scene, he was "extremely loud, accusing me of causing the accident, saying it's all my fault, trying to intimidate me." Aliikea approached Bloom and pushed him.

Shortly after Aliikea arrived, Basham also came up to the road from the beach. Bloom testified that "when he first came up, [Basham] was ... just as excited," but within a minute or so, Bloom heard Basham "say to the other one," "don't ... hit him, don't lick him." Bloom thought, "Oh, he's actually got the cool head in this, so okay, calm down."

Bloom testified that once Aliikea and Basham arrived, Driver "became more vocal." Aliikea then pushed Bloom and put his hand up to or grabbed Bloom's throat. Bloom knocked Aliikea's hand away, and told Chavez to get behind him. Bloom does not recall what happened next, and remembers only regaining consciousness later in his car.

Chavez testified to a similar sequence of events as Bloom. When Aliikea arrived at the scene, he was "very upset," telling Bloom, "This is your fault," and "kind of pushing [Bloom] back." When Chavez tried to get between Aliikea and Bloom, Aliikea pushed Chavez away. Bloom told Chavez to stay away in Spanish, which is Chavez's first language. Aliikea "start[ed] getting very upset and started pushing" Bloom more strongly. Basham arrived and told Aliikea, "Don't lick him."

Chavez testified that Aliikea then pushed Bloom, causing Bloom to fall backwards on the ground and hit his head. When Bloom tried to get up, Aliikea grabbed Bloom's neck. Bloom tried to take Aliikea's hand away, but fell again. Chavez testified that after Bloom fell again, "[B]y that time [Basham] grab [Bloom] from the back and hold him down, and then ... [Aliikea] kick him, and then at that moment, the other guy ... who was driving the car jump on top of [Bloom's] belly."

On cross-examination, Chavez testified that she told Honolulu Police Department (HPD) Officer Chad Barrett about Basham grabbing and holding Bloom down by the shoulders, and about Aliikea kicking Bloom. However, she acknowledged that the written statement, which she had dictated to Officer Barrett just after the incident, did not include such information. Officer Barrett wrote her statement down for her because she was unable to write in English at the time. She signed the statement, attesting that it was "true and correct to the best of my knowledge." Nevertheless, Chavez testified that she told Officer Barrett that Bloom was held down and kicked, but Officer Barrett did not write it down and it was not reflected in the written statement.

Chavez testified that after Bloom fell to the ground, Driver "jump[ed] on top of [Bloom's] belly," and began punching Bloom in the face. Bloom started having a seizure, and Chavez "started screaming," "He's dead.... You'll kill him." Chavez testified that was when "they stop[ped]." Chavez helped Bloom walk to the car. She placed Bloom in the front passenger seat, got into the driver's seat, and closed and locked all of the doors.

Chavez clarified that Basham held Bloom down by the shoulders, "[o]nly in the beginning," when Driver jumped on Bloom. No one held down Bloom's shoulders when Driver began punching Bloom. On cross-examination, however, Chavez testified that after Bloom fell, "they pushed him down again,"

---

3. Driver was not prosecuted in this case. Driver's identity was disputed by the parties. Aliikea testified that his brother Kepa Basham, Basham's second youngest son, was Driver. The State argued that Hanau Basham, Basham's youngest son, was Driver, based on Chavez's identification during a photographic lineup.

and by the time Driver jumped on Bloom, "[b]y that moment ... [o]ne was on the left side, the other on the right side. And that's why [Bloom] couldn't stand up."

Chavez was on the phone with a 911 operator throughout the incident. Following the operator's instructions, once she and Bloom were back in their car, she turned on the car in order to drive away. However, Basham began punching the window on the driver's side door. The paramedics and police arrived soon after.

Aliikea and Basham remained at the scene when the police arrived. However, Driver had already run away at that point.

HPD Officer Michael Dela Cruz testified that he was patrolling in the Ewa Beach area on September 22, 2007. He responded to a dispatch and arrived at the scene of the accident at around 3:00 p.m. When he arrived, Bloom, Chavez, Basham and Aliikea were present at the scene. Officer Dela Cruz testified that he conducted a field show-up, in which officers "detain possible suspects to have a witness or a complainant make positive identification." Bloom participated in the field showup and informed Officer Dela Cruz that "he could not positively identify either males [sic] at that time." Chavez also participated in the field show-up and identified Basham.[4]

HPD Officer Keola Kopa testified that on September 22, 2007, the police were dispatched to respond to "several males fighting." Officer Kepa's responsibility "was only to document the accident, ... nothing more, just the vehicles involved." He attempted to identify the driver of each car involved in the accident. He explained that "if there's no one behind the driver's seat, then we try to get witnesses, and we try to ascertain the driver, either by asking or just—anything at the scene that we can see to help us ascertain who was driving." Based on his investigation, Officer Kopa determined that Basham was the driver of the blue car. Officer Kopa spoke to Basham, but could not remember whether Basham stated that the blue car was his.

HPD detective John Coleman testified that on September 25, 2007, he was assigned to be the lead investigator on the case. He testified that during the course of his investigation, he determined that neither Basham nor Aliikea had any prior criminal history of arrests or convictions. Officer Barrett, who wrote down Chavez's dictated statement after the incident, was not called as a witness by the State.

### B.

Basham did not testify during the trial and did not present any witnesses on his behalf.

Aliikea testified to the following facts. He testified that his father, Basham, most recently worked as an adult correctional officer at the Halawa prison. On September 22, 2007, Aliikea and his father were at the beach with family and friends. At some point during the day, his brother left to go and get some ice.

Aliikea was on the beach when he noticed what appeared to be an accident on the road involving his father's car, which he knew his brother was driving. Basham told Aliikea to go and check on what had happened. Aliikea testified that when he approached the cars, he was "not calm" and "appeared angry 'cause I was just frustrated with my brother" and could not "see how people could get in [an] accident on that bridge." Upon arriving, he said, "[W]hat the hell is going on" to both his brother and to Bloom and Chavez. He went to talk to Driver about what had happened. Bloom came towards them to ask about insurance, and Aliikea told him, "[C]an you just back away and so I can figure out what is going on, my dad is almost here." Bloom backed away but then "came back and kept on coming back to talk about the insurance." Aliikea put up his hand to push Bloom away. He testified that he did not yell at Bloom or grab or choke Bloom's neck.

When Basham arrived, he began talking to Bloom, while Aliikea tried to calm Driver down because "[Driver] was getting a little

---

4. Although the prosecutor also asked Officer Dela Cruz if Chavez identified Aliikea, the transcript of the trial does not indicate that Officer Dela Cruz responded after the court overruled defense counsels' objections.

crazy." Basham then came back to where Aliikea and Driver were standing. Aliikea's attention was directed towards Driver. Aliikea explained that as he was telling Driver to "just let dad handle it," he heard Basham say watch out, and felt Basham push him out of the way. Aliikea turned and saw Bloom falling. He testified that Basham had pushed Bloom. He saw Bloom try to get up, and "all of a sudden" Driver was on top of Bloom, straddling him. Then Driver began punching Bloom in the face. Aliikea stood there "in shock" at first and then pulled Driver off of Bloom. Basham walked over to try to help Bloom up, but Chavez started "whacking" Basham, saying "you're killing him." At some point, Aliikea realized that Driver was no longer present.

Aliikea testified that neither he nor Basham held Bloom to the ground at any time. He also testified. that once Bloom and Chavez were in the car, Basham told him to stop the car because it looked like they were attempting to leave. Aliikea knew that the police were on their way. He stood in front of the car to prevent Bloom and Chavez from leaving.

After the defense rested and the State recalled Chavez, Defendants' counsel moved for a judgment of acquittal "as to the issue of principal versus accomplice." The court denied the motion.

### C.

The State requested jury instructions related to accomplice liability under HRS § 702–222, which provides that a person is an accomplice of another in the commission of an offense if, with the intention of promoting or facilitating the commission of the offense, the person aids or agrees or attempts to aid the other person in planning or committing it. The State's proposed instructions included four separate instructions on accomplice liability. However, the State did not request an instruction defining the mens rea element of intent to promote or facilitate the commission of the offense.

During the settling of jury instructions, which occurred just before closing arguments, the parties agreed that the court's proposed instruction on accomplice liability would be given as modified. The court's modified instruction did not include a definition for the phrase "intent to promote or facilitate the commission of the offense." The prosecutor did not object to the lack of such definitions during the settling of jury instructions.

Accordingly, prior to closing arguments, the court gave the following jury instruction on accomplice liability:

> A defendant charged with committing an offense may be guilty because he is an accomplice of another in the commission of the offense. The prosecution must prove accomplice liability beyond a reasonable doubt.

> A person is an accomplice of another in the commission of an offense if, with the <u>intent to promote or facilitate the commission of the offense,</u> he aids or agrees or attempts to aid the other person in the planning or commission of the offense.

> Mere presence at the scene of an offense or knowledge that an offense is being committed, without more, does not make a person an accomplice to the offense. However, if a person plans or participates in the commission of an offense with the <u>intent to promote or facilitate the offense,</u> he is an accomplice to the commission of the offense.

(Emphases added).

The court also instructed the jury generally: "Statements or remarks made by counsel are not evidence. You should consider their arguments to you but you are not bound by their recollections or interpretations of the evidence."

The prosecutor then proceeded with his closing argument.[5] The prosecutor began his argument by characterizing the case as a simple case turning on the issue of witness credibility:

---

5. The court allotted fifty minutes for the prosecutor's closing argument and twenty-five minutes for each defendant. Hawai'i Rules of Penal Procedure (HRPP) Rule 24.1(b) provides that "[i]n addressing the jury, each party shall be allowed to fully and fairly state the party's theory of the case and the reasons that entitle the party to a verdict."

Ultimately this is a simple case. It is a simple case because it turns on one issue and one issue alone. That issue is witness credibility. You have heard during this relatively brief trial two versions of events as to what transpired on that road leading to Oneula Beach Park. As the jurors, as the finders of fact, it is your sole responsibility to determine the credibility of the witnesses.

(Emphasis added). After stating that it was the "sole responsibility" of the jurors "to determine the credibility of the witnesses," the prosecutor declared, "on behalf of the prosecution," Bloom and Chavez were "completely credible witnesses" with "absolutely no reason" to lie:

On behalf of the prosecution, I adamantly state to you, that Mr. and Mrs. Bloom have been completely credible witnesses, that they are worthy of your belief. They have no axe to grind, no revenge to be had. They did not know the Defendants Basham before this incident. They have absolutely no reason to fabricate or otherwise make up the accounts that they have recited to you in explicit detail.

(Emphases added).

The prosecutor contrasted Bloom and Chavez with Aliikea, and informed the jury that Aliikea "has absolutely no reason to tell you the truth":

Defendant Aliikea Basham, on the other hand, has decided to testify, which is his right. When a defendant testifies, his credibility is to be weighed as any other witness. But you need to keep something in mind. Defendant Aliikea Basham has absolutely no reason to tell you the truth. So the selection or the choice before you in weighing the credibility of the witness is this. Your willingness to believe two people who have no reason to lie to you versus one person who has no reason to tell you the truth.

(Emphases added).

The prosecutor then reviewed the charges against Defendants, "[a]gainst that understanding" that the jury had to make a choice between believing two people who have no reason to lie versus one person who has no reason to tell the truth.

In discussing accomplice liability, the prosecutor first stated the elements of such liability in accordance with the jury instructions:

On page 24 of your instructions, and you don't have to turn to them now, allow me just to talk to you about it, the concept of accomplice liability was explained to you. A person is an accomplice of another if in the commission of Assault in the First Degree, with intent to promote or facilitate the commission of Assault in the First Degree, the person aids or agrees or attempts to aid the person in the planning or the commission of the offense.

(Emphasis added). The prosecutor continued, "Let's define a couple of those words and put it in everyday English that we can understand. A person is an accomplice if with intent to promote—what does that 'promote' mean? It simply means for our purposes to encourage, the desire to bring about." (Emphasis added).

Basham's counsel immediately objected. During the ensuing bench conference, Basham's counsel objected that the prosecutor's definition was a "far cry" from the legal definition of the term "intent to promote," which was defined very narrowly to mean that the "defendant had the intent to promote the commission of the particular offense":

[Basham's counsel]: Ask the Court to instruct the jury the use of the word "intent" clearly under Hawai'i state law, *State v. Yip*, Yabusaki, Soares, the words "intent to promote" is used in very narrow circumstances, meaning that with regard to accomplice liability proof must be had beyond a reasonable doubt that the defendant had the intent to promote the commission of the particular offense. And [the prosecutor's] use of it is a far cry from what the legal definition is under the Hawai'i case law and intent has to be construed in terms of the intentional state of mind that the Court has given. So his current argument is highly misleading and prejudicial if you let it stand.

(Emphasis added). Aliikea's counsel joined in the objection. However, the court overruled the objection.

The prosecutor then continued to define the terms of the jury instruction on accomplice liability, informing the jury that "promote" meant "to encourage," and "facilitate" meant "to make easy" or "to bring about":

> [Prosecutor]: The term "promote" means to encourage. What does the word "facilitate" mean? Using your everyday life experience, that's a rather big word, to facilitate. How about to bring about, that's what facilitate means. Facilitate, for those of you who studied Latin, might be based in the root of facile. What does facile mean? Easy or to make easy or to bring about.

(Emphases added). The prosecutor argued that "at a minimum," Basham and Aliikea were "guilty of Assault in the First Degree as an accomplice."

In discussing Basham's role in the incident, the prosecutor argued that Basham "lied to the police" because Officer Kopa identified Basham as the driver of the blue car, and only Basham could have been the source of such information:

> You know that Defendant Michael Basham lied to the police. How do you know that? When Officer Keola Kopa, the second police officer who testified, he had the suit and the—the stubble, he told you his only job at the scene was to document the minor motor vehicle collision. And whom did he identify as the operators? Steven Bloom, Michael Basham. Who could the only source of that information be? Not Steven Bloom who had been knocked unconscious. Michael Basham.

(Emphases added). The prosecutor argued, "In other words, [Basham] took the role of his son as the driver and thus lied to the police."

The prosecutor concluded his argument by stating that Basham and Aliikea "intentionally or knowingly engaged in conduct with the intent to promote or facilitate the commission of Assault in the First Degree," by "actively aiding the third Basham in literally rendering unconscious [Bloom]."

### D.

Basham's counsel then proceeded with his closing argument. Counsel first reminded the jury that they were required to apply the "specific legal definition" of terms as "they appear in the [jury] instructions and how they are defined to you," rather than the "everyday common sense" definitions. Counsel then addressed the prosecutor's statement that Aliikea had no reason to tell the truth:

> Now, [the prosecutor] appears to be saying that when Aliikea Basham took the stand he had no reason to tell you the truth. Now, I take offense with that statement because Aliikea took the stand, he took the oath to tell the truth just like all the other witnesses in this case, and you heard Judge Lee say when a witness testifies, whether it's a defendant or not, they're supposed to be treated equally like any other witness. So the way I take [the prosecutor's] statement you should not believe Aliikea because he's a defendant in the case, it does violence to that legal principle that the Judge has instructed us on.

(Emphasis added).

Counsel continued by arguing that Chavez's testimony was not credible. Counsel argued that if anything, the State would have to prove that Defendants were accomplices because neither Aliikea nor Basham actually caused the injuries to Bloom. He argued that based on Aliikea's testimony, "certainly Michael is not guilty of anything." Counsel contended that the prosecutor had not caught Aliikea in a lie during his testimony because "he wasn't lying." On the other hand, Chavez's testimony, counsel argued, included facts favorable to both sides.

### E.

Following closing arguments, Aliikea's counsel moved for mistrial based on two instances of alleged misconduct during the prosecutor's rebuttal, in which the prosecutor informed the jury that Officer Barrett no longer lived on the island of Oʻahu and argued that Aliikea's testimony "tracked" Chavez's dictated statement to Officer Barrett

because Aliikea read the statement.[6] The court had granted the motion to strike both comments during the prosecutor's rebuttal.

Basham's counsel joined in the motion, incorporating the same objections and additionally arguing that the prosecutor's use of the word " 'intent' in the context of the accomplice liability issue" was "clearly erroneous." Basham's counsel again noted that Hawai'i cases made it clear that the word "intent" as used in the accomplice liability statute required the State to prove the defendant had the specific intent to cause the resulting offense. The prosecutor's argument was "clearly a misstatement of the law and in no way is a reasonable construction of the accomplice liability statute." Counsel argued that although the court had overruled his objection during the prosecutor's closing, the court "also denied a request for ... cautionary instructions, so the prejudice has not been cured and I move for mistrial at this time."

The court denied the motion, explaining with respect to the prosecutor's definition of intent, "the Court had instructed the jurors on the law and the law clearly indicates that the person is an accomplice if with the intent to facilitate the commission of an offense."

Subsequently on June 14, 2011, the jury returned verdicts finding Aliikea and Basham guilty of assault in the first degree. The court sentenced both Aliikea and Basham to ten years of imprisonment.

## II.

### A.

On appeal to the ICA, Basham argued in relevant part that 1) the circuit court "abused its discretion in denying the defense's motion for mistrial following the prosecutor's numerous acts of misconduct during closing argument"; 2) the circuit court "abused its discretion in overruling the defense's objection to the prosecutor's misstatement of the law on accomplice liability, refusing to give a cautionary instruction, and then denying the motion for mistrial"; and 3) there was insufficient evidence to sustain Basham's conviction for assault in the first degree and any lesser-included offenses.

In support of the first point of error, Basham referenced several instances of prosecutorial misconduct, including the prosecutor's assertion that Basham lied to the police by telling Officer Kopa that he was the driver of the blue car.[7] Basham contended that the prosecutor's statement was not a reasonable inference from the evidence "because there was more than one possible source, other than [Basham], for determining the driver." In addition, Officer Kopa never testified that Basham told him he was the driver. Thus, Basham argued that the prosecutor's statement was an attempt to attack his credibility, which was "especially offensive to his right to a fair trial because [he] did not testify."

In addition, Basham contended that the prosecutor, by making the assertion, intended to comment on his failure to testify. The

---

6. During rebuttal, the prosecutor stated, "The defense would make a big deal how come Officer Barrett isn't here to testify? Well, as Officer Dela Cruz told you, Officer Barrett is no longer a policeman. In fact Officer Barrett no longer lives on the island of Oahu." No evidence had been adduced as to the fact that Officer Barrett no longer lived on the island, and the court struck the comment.

Later during the rebuttal, the prosecutor responded to Aliikea's counsel's argument that Aliikea was telling the truth because he said things that either hurt him or his father. The prosecutor stated, "The best kind of lies are those that track the truth to a point and stop because those kinds of lies make it difficult to distinguish if it's in fact truth or lie." The prosecutor argued that Aliikea "couldn't come up and say I wasn't there or I wasn't argumentative or I didn't touch [Complainant] because to do so would make his

version so incredible, so unworthy of belief that he would automatically have to be discredited." Thus, the prosecutor argued, "[W]hat [Aliikea] did was he tracked the statement. And [defense counsel] said it, Aliikea Basham's statement tracks [Chavez's] dictated statement to Officer Barrett. It does that because—the reasonable inference is that Aliikea Basham read the statement[.]"

7. Additionally, Basham argued that the prosecutor committed misconduct by: 1) stating that Officer Barrett no longer lives on the island; 2) stating that Aliikea's testimony tracked Chavez's dictated statement to Officer Barrett; and 3) informing the jury that their verdict was important, "not only to the defendants but ... to an orderly community," and stating, "We resolve things by avoiding the use of violence."

jury would also naturally and necessarily have interpreted the statement as "a comment on Michael's failure to talk to the police and failure to testify." Basham argued that the prosecutor's misconduct was not harmless because the statement attacked his credibility, no curative instruction was given, and the State's case "rested upon an accomplice theory and a single, biased eye-witness[.]" [8]

With respect to the second point of error, Basham argued that the prosecutor misstated the law on accomplice liability under HRS § 702–222 by separately defining the terms "promote" and "facilitate" used in the statute. By defining the terms, "there was a risk that the jury would confuse the State's burden of proving that the defendants had the specific 'intent to promote and facilitate the commission of the offense' as synonymous with the element of aiding and agreeing or attempting to aid[.]" In other words, the jury was misled to believe that it was enough for the State to prove that the defendants merely 'encouraged' the driver to assault Bloom or 'made easy' the assault on Bloom, when the law requires that the State also prove" the mens rea of intent to promote or facilitate the commission of the assault.[9]

Basham contended that the jury should have minimally been given a cautionary instruction that they adhere to the court's instructions on the law of accomplice liability.

Third, Basham argued that there was insufficient evidence to support his conviction for assault in the first degree and for any lesser-included offenses. He noted that the State prosecuted him under the theory of accomplice liability because it was clear he did not cause Bloom's injuries. Viewed in the strongest light for the prosecution, the evidence established that Basham said "don't hit him, don't lick him," either pushed or grabbed Bloom before Bloom fell to the

ground, and held Bloom by the shoulders when Bloom was on the ground, but stopped once Driver jumped onto Bloom. Basham argued that by warning his son not to hit Bloom, he demonstrated his intent to prevent the assault, and the fact that he let go of Bloom's shoulders when Driver jumped onto Bloom showed that he did not intend to promote or facilitate an assault.

**B.**

In response, the State argued that neither defendant objected to the prosecutor's statement that Basham lied to the police; thus, the claim must be reviewed for plain error. The State contended that the "evidence was unequivocal that a young man with red-tinted hair was the driver." The evidence demonstrated that Officer Kopa, after speaking to the witnesses at the scene, determined that Basham was the driver. According to the State, only four people were at the scene, and neither Bloom nor Chavez would have identified Basham as the driver. Aliikea testified that his brother was the driver, leaving only Basham as the "sole person who would have lied to Officer Kopa." Thus, the prosecutor's assertion was a reasonable inference and did not constitute error. Additionally, the assertion was not a comment on Basham's failure to testify.

In regard to the prosecutor's statement of the law on accomplice liability, the State contended that the prosecutor referred several times to the court's jury instruction. The State argued that because "promote" and "facilitate" are not defined by the statute, "the prosecutor utilized the words' usual and ordinary meanings to assist the jury in understanding the words in the context of the accomplice liability instruction." This was proper because "words of a law are

---

8. Basham also argued that the cumulative effect of the four instances of misconduct, *see supra* note 7, required a new trial. Basham further argued that the double jeopardy clause barred the State from reprosecuting him because the prosecutor's repeated misconduct "exhibited the prosecutor's willful purpose to undermine the trial process," and it could not be said beyond a reasonable doubt that he received a fair trial.

9. This argument was also raised to this court in Basham's writ of certiorari and at oral argument. *See* Audio recording: Oral Arguments, STATE OF HAWAI'I, Respondent/Plaintiff-Appellee vs. MICHAEL W. BASHAM, Petitioner/Defendant–Appellant, and ALIIKEA BASHAM, Aka Aliikea I. Basham, Defendant (No. SCWC–11–0000758) Thursday, August 15, 2013, at 15:25 (Available at http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc11758.html, last visited Jan. 21, 2014.)

generally to be understood in their most known and usual signification." Thus, the circuit court did not abuse its discretion by overruling the defense objections to the prosecutor's definitions, denying the request for a cautionary instruction, and denying the defense's motion for mistrial.

The State contended that assuming arguendo that the prosecutor's remarks were improper, Basham was not denied a fair trial. The State argued there was "no reason to believe that the jury did not follow the court's instructions," and "the evidence adduced proving that the defendants were accomplices was very strong."

Finally, on the sufficiency of the evidence issue, the State argued that when viewed in the light most favorable to the prosecution, the evidence showed "that the defendants held [Bloom] down <u>while</u> the driver pummeled him." Even assuming that Basham stopped holding Bloom when Driver jumped onto Bloom and began punching, "the defendants had already accomplished their purpose of aiding the driver's commission of the crime, for [Bloom] was absolutely defenseless." Thus, the State contended that there was substantial evidence supporting Basham's conviction.

## C.

On the first issue, the ICA held that the prosecutor's statement that Basham lied to the police was a "permissible and reasonable inference based on evidence in the record that Basham misrepresented himself as the driver involved in the collision." *State v. Basham*, No. CAAP–11–0000758, 128 Hawai'i 499, 2012 WL 6738798, at *2 (Haw.App. Dec. 31, 2012) (SDO). On the second issue, the ICA determined that the prosecutor did not misstate the law by defining the words "promote" and "facilitate." *Id.* at *3. Rather, the prosecutor "referenced the plain meaning of the words." *Id.*

Regarding the sufficiency of the evidence, the ICA found that "Basham concedes the evidence shows Basham pushed or grabbed [Bloom] before [Bloom] fell to the ground, and that Basham held [Bloom] to the ground." *Id.* at *4. Although Basham maintained that the evidence did not sufficiently demonstrate intent to assault because Basham stopped holding Bloom to the ground once Driver began punching Bloom, the ICA held that there was substantial evidence supporting the jury's conclusion in this case. *Id.*

Accordingly, the ICA affirmed Basham's conviction. *Id.* at *5.

## III.

In his application for writ of certiorari (Application) to this court, Basham raises two points of error for review:

A. Whether the ICA gravely erred in determining that the prosecutor did not engage in misconduct during closing argument when: (1) the prosecutor argued that Petitioner lied to the police, although Petitioner did not testify at trial and the police officer could not remember what Petitioner had told him and (2) the prosecutor misstated the law on accomplice liability, thereby confusing the jury as to the elements of the assault offense.

B. Whether the ICA gravely erred in concluding that the evidence was sufficient to sustain a conviction for assault based upon accomplice liability.

## IV.

We first address Basham's argument that the prosecutor misstated the law on accomplice liability during closing argument.

HRS § 702–222 (1993), titled "Liability for conduct of another; complicity," provides in relevant part that: "A person is an accomplice of another person in the commission of an offense if: (1) With the intention of promoting or facilitating the commission of the offense, the person ... (b) Aids or agrees or attempts to aid the other person in planning or committing it[.]"

In this case, the prosecutor informed the jury during closing argument that the word "promote" "simply means for our purposes to encourage, the desire to bring about." After the court overruled defense counsel's objection, the prosecutor continued and informed the jury that the word "facilitate," means "to bring about." In addition, he stated that the

root word of "facilitate" is "facile," which he defined as "easy or to make easy or to bring about." This argument is problematic for several reasons.

First, HRS § 702–222 does not define the words "promote" or "facilitate." The statute is derived from the nearly identical accomplice liability provision within the Model Penal Code, Section 2.06 (1962), which also does not define the terms.[10] *See State v. Aiwohi,* 109 Hawai'i 115, 126, 123 P.3d 1210, 1221 (2005) ("The Hawai'i Penal Code is substantially derived from the Model Penal Code. Accordingly, it is appropriate to look to the Model Penal Code and its commentary for guidance." (Footnote omitted)). The Comment to Section 2.06 of the Model Penal Code provides that an accomplice, in having the purpose of promoting or facilitating the commission of the offense, is required to "have as his [or her] conscious objective the bringing about of conduct that the Code has declared to be criminal":

> Subsection (3)(a) requires that the actor have the purpose of promoting or facilitating the commission of the offense, i.e., <u>that he have as his conscious objective the bringing about of conduct that the Code has declared to be criminal.</u> This is not to say that he must know of the criminality of the conduct; there is no more reason here to require knowledge of the criminal law than there is with the principal actor. But he must have the purpose to promote or facilitate the particular conduct that forms the basis for the charge, and thus he will not be liable for conduct that does not fall within this purpose.

Model Penal Code § 2.06 cmt. (1962) (emphasis added).

■ The meaning of the phrase "intention of promoting or facilitating the commission of the offense" as used in HRS § 702–222 must be interpreted within the context of the accomplice statute and the derivative source of the statute, which is the Model Penal Code. *See* HRS § 1–15(1) ("meaning of

ambiguous words may be sought by examining the context . . . in order to ascertain their true meaning"). In the context of the accomplice statute, the Model Penal Code makes clear that "intent to promote or facilitate" means to have the <u>conscious objective of bringing about the commission of the offense.</u>

■ Having an intent to make easy or to encourage criminal conduct is not equivalent to having an intent to bring about the commission of the criminal offense. While the prosecutor referenced "to bring about" in defining both "promote" and "facilitate," by also defining the words in terms of "encouraging" or "making easy," the prosecutor reduced the culpability necessary to satisfy the statutory definition of an accomplice.

The ICA held that the "prosecutor did not misstate the law, but referenced the plain meaning of the words." *Basham,* 2012 WL 6738798, at *3. However, the words "promoting" and "facilitating" can be attributed several ordinary meanings. "Promote" or "promoting" may be defined as "to advance in station, rank, or honor," "to contribute to the growth or prosperity of," "further," or "to help bring (as an enterprise) into being." Merriam–Webster.com, http://www.merriam-webster.com/dictionary/promoting (last visited Dec. 9, 2013). "Facilitate" or "facilitating" may be defined as "to make easier," "to help cause," "to help (something) run more smoothly and effectively," or "help bring about." Merriam–Webster.com, http://www.merriam-webster.com/dictionary/facilitating (last visited Dec. 9, 2013).

■ Neither party should be permitted to argue during closing arguments for alternative definitions of terms in the jury instructions that best fits their own theory of the case. If such arguments were permitted, then either side could orally amend the court's instructions during closing argument by providing their own popular definitions of key terms in the instructions. The jurors would then be able to select the definition

---

**10.** Model Penal Code § 2.06(3) provides:
A person is an accomplice of another person in the commission of an offense if:
(a) with the purpose of promoting or facilitating the commission of the offense, he

(i) Solicits such other person to commit it, or
(ii) Aids or agrees or attempts to aid such other person in planning or committing it
* * *

they preferred or remembered when applying the court's instructions during deliberations. Such a practice would be especially problematic if it involved critical instructions that are key to the State's theory of prosecution, as the accomplice instruction was in this case.

It is precisely to avoid such confusion that the rules provide a specific procedure for the court, rather than the counsel or the parties, to instruct the jury on the law. Hawaiʻi Rules of Penal Procedure (HRPP) Rule 30(b) (2012) provides that parties "shall file written requests that the court instruct the jury on the law." When a request is filed, counsel is "entitled to be heard thereon." HRPP Rule 30(c). "The court may revise the language of any or all of the requested instructions which are approved by the court in whole or in part[.]" HRPP Rule 30(d). The court is required to "inform counsel of its proposed action with respect to any such revision made or instructions prepared by the court, and any changes thereon made by the court shall be reduced to writing and submitted to counsel prior to their arguments to the jury." HRPP Rule 30(d). Jury instructions that are settled as set forth above "shall be read to the jury." HRPP Rule 30(d).

The rules prohibit oral amendments to the jury instructions once they have been given to the jury. HRPP Rule 30(e) provides that the court "shall in no case orally qualify, modify or explain to the jury any instruction ...." (Emphasis added). When the jury requests further instruction during deliberation on its verdict, the court may provide further instructions, but the instructions must be "reduced to writing" and "first submit[ed]" to counsel. HRPP Rule 30(e)

In this case, the above procedures were followed by the parties until the prosecutor orally modified the court's accomplice instruction by defining the words "promote" and "facilitate." The prosecutor did not submit a written request for such definitions, despite submitting four other proposed instructions related to accomplice liability. The prosecutor also did not object to the lack of such definitions during the settling of jury instructions, which occurred just before closing arguments. Thus, neither the court nor

defense counsel had approved of defining "promote" as "to encourage" and "facilitate" as "to make easy."

■ "'[A]rguments of counsel which misstate the law are subject to objection and to correction by the court.'" State v. Espiritu, 117 Hawaiʻi 127, 140, 176 P.3d 885, 898 (2008) (quoting State v. Mahoe, 89 Hawaiʻi 284, 290, 972 P.2d 287, 293 (1998)) (brackets omitted). However, in this case, the court overruled defense counsel's objection to the prosecutor's definitions, and no curative instruction was given. Given that the prosecutor's definitions reduced the culpability required by HRS § 702-222 and effectively amended the court's jury instructions, the court was <u>required</u> to sustain defense counsel's objection pursuant to HRPP Rule 30(e). Cf. State v. Haanio, 94 Hawaiʻi 405, 415, 16 P.3d 246, 256 (2001) ("[I]n our judicial system, the trial courts, not the parties, have the duty and ultimate responsibility to insure that juries are properly instructed on issues of criminal liability."), <u>overruled in part on other grounds,</u> State v. Flores, 131 Hawaiʻi 43, 314 P.3d 120 (2013); State v. Kikuta, 125 Hawaiʻi 78, 90, 253 P.3d 639, 651 (2011) ("With respect to jury instructions, it is the duty of the trial court to ensure that the jury is properly instructed.").

Because the court overruled defense counsel's objection, the court endorsed the definitions given by the prosecutor. See Espiritu, 117 Hawaiʻi at 143, 176 P.3d at 901 (Because defense counsel's objections to prosecutor's misstatement of law during closing argument were overruled, "the jury would reasonably perceive that the misstatement of the law was not incorrect."); State v. Schnabel, 127 Hawaiʻi 432, 453, 279 P.3d 1237, 1258 (2012) ("[B]y overruling defense counsel's objection, the court, at least tacitly, placed its imprimatur upon the [prosecutor's] improper remarks.") (quoting State v. Pacheco, 96 Hawaiʻi 83, 96, 26 P.3d 572, 585 (2001)) (quotation marks and brackets omitted). Thus, the prosecutor's definitions of the accomplice instruction became the court's instructions upon the law, and the jury was essentially instructed that it was permissible to find the intent element of the accomplice instruction to be present if Basham acted

with the "intent to encourage or to make easy the commission of the offense." Such an instruction is a misstatement of the law on accomplice liability.[11]

■ "If improper comments are made by a prosecutor, 'harm or prejudice to a defendant can be cured by the court's instructions to the jury.'" *Espiritu*, 117 Hawai'i at 143, 176 P.3d at 901 (quoting *State v. Melear*, 63 Haw. 488, 497, 630 P.2d 619, 626 (1981)) (brackets omitted). "Correlatively, the failure to correct misstatements of law by a prosecutor may result in reversal of a defendant's conviction." *Id.*

■ The prosecutor did not make a curative statement specifically directed at correcting the improper definitions that had been provided. Additionally, no curative instruction was given by the circuit court. Although the court generally instructed the jury prior to closing arguments that "[s]tatements or remarks made by counsel are not evidence," this instruction did not neutralize the prosecutor's oral amendment to the accomplice instruction, which misstated the requirements of the law. "[I]nasmuch as the specific misstatements in question have to do with law and not evidence," the court's instruction that "statements or remarks by counsel are not evidence" is "inapposite." *Id. See State v. Tuua*, 125 Hawai'i 10, 17, 250 P.3d 273, 280 (2011) ("[T]he prosecution has not pointed to Hawai'i case law suggesting that a court's generic instructions that arguments of counsel are not evidence, issued prior to improper statements, can cure misconduct in close cases involving the credibility of witnesses.").

Additionally, while the court properly instructed the jury on accomplice liability, that instruction did not cure the prosecutor's misstatements of the law, where no specific curative instruction relating to the misstatements

was given. *See Melear*, 63 Haw. at 497, 630 P.2d at 626–27 (trial court's instruction to the jury to disregard prosecutor's improper arguments and court's "immediate reading of the entire charge to the jury removed any harm or prejudice"); *Espiritu*, 117 Hawai'i at 143, 176 P.3d at 901 ("While the court here did properly instruct the jury on the elements of the EMED defense …, that instruction could not cure [the prosecutor's] misstatements of the law, where no specific curative instruction relating to the misstatements were given.").

The misstatement of the law for which no curative instruction was given was not harmless beyond a reasonable doubt. *See Espiritu*, 117 Hawai'i at 144, 176 P.3d at 902. The State's evidence demonstrated that Basham told Aliikea not to hit Bloom, and after Aliikea caused Bloom to fall to the ground, Basham held Bloom down until Driver jumped on Bloom. There was conflicting testimony by Aliikea that Basham pushed Bloom, causing Bloom to fall, but neither Aliikea nor Basham held Bloom down. The State's primary basis for convicting Basham of assault in the first degree was to allege that he acted as an accomplice to Driver. The prosecutor's misstatement of the law and the court's lack of a curative instruction "bore directly" on Basham's alleged accomplice liability. *See id.* Thus, "[t]here exists, at the least, a reasonable possibility that the error complained of might have contributed to [Basham's] conviction" for assault in the first degree. *See id.* (even assuming the State's evidence strongly indicated that defendant was not acting under extreme mental or emotional disturbance, there was at least a reasonable possibility that the error might have contributed to the conviction).

■ Basham's conviction is therefore vacated and the case is remanded for a new trial.[12]

---

11. The dissent describes the prosecutor's definitions of promote and facilitate as a "routine rephrasing of the law, analogous with Basham's discussion of intent and "proof beyond a reasonable doubt." Dissent at 120, 319 P.3d at 1128. The significant distinction is that the prosecutor's definitions bore directly on Basham's alleged accomplice liability by orally modifying the instructions given by the court with the effect of expand-

ing culpable conduct beyond that prescribed by statute.

12. "[B]ecause it cannot be said that the prosecutor's conduct was so egregious that viewed under an objective standpoint, Petitioner was denied his or her right to a fair trial, reprosecution is not barred under the double jeopardy clause." *Espiritu*, 117 Hawai'i at 144, 176 P.3d at 902. See *State v. Rogan*, 91 Hawai'i 405, 423, 984

## V.

In order to provide guidance to the circuit court and the parties on remand, we address Basham's remaining claims of prosecutorial misconduct.[13] *See State v. Pacheco*, 96 Hawai'i 83, 88, 26 P.3d 572, 577 (2001) (vacating conviction and remanding for new trial based on prosecutorial misconduct and addressing additional issues on erroneously admitted evidence, ineffective assistance of counsel, and choice of evils defense "[i]n order to provide guidance to the circuit court and the parties on remand"); *State v. Davia*, 87 Hawai'i 249, 252, 953 P.2d 1347, 1350 (1998) (vacating conviction and remanding for new change of plea hearing based on district court's failure to establish that defendant's plea was knowing and voluntary, but addressing defendant's remaining points of error "in order to provide guidance to the district court and the parties on remand").

The second issue raised by Basham's application is whether the prosecutor engaged in misconduct during closing argument by arguing that Basham lied to the police, although Basham did not testify at trial and the police officer could not recall what information was given by Basham. Basham argued in his Application that if the prosecutor had attempted to introduce statements made by Basham to the police during the trial, those statements would have been subject to the Hawai'i Rules of Evidence (HRE), particularly Rules 402 through 404 regarding relevance, prejudice, and character evidence, and Rules 802 and 803 regarding hearsay. He contended that the prosecutor's statement during closing argument that Basham lied to the police "allowed the prosecutor to circumvent these evidentiary and constitutional protections and cannot be condoned."

"[A] prosecutor, during closing argument, is permitted to draw reasonable inferences from the evidence . . . ." *State v. Clark*, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996). "Although a prosecutor has wide lati-tude in commenting on the evidence during closing argument, it is not enough that . . . [the prosecutor's] comments are based on testimony in evidence; his comments must also be legitimate." *State v. Mainaaupo*, 117 Hawai'i 235, 253, 178 P.3d 1, 19 (2008) (quotation marks and citations omitted). "A prosecutor's comments are legitimate when they draw reasonable inferences from the evidence." *Id.* at 253–54, 178 P.3d at 19–20.

"Whether the evidence bears a logical and proximate connection to the point the prosecutor wishes to prove [is] perhaps the most obvious consideration[ ] in determining whether an inference is reasonable." *U.S. v. Waldemer*, 50 F.3d 1379, 1384 (7th Cir.1995). It is also relevant whether the prosecutor made the argument simply to enflame the passions of the jury. *Id.* Another consideration is whether the inference asked to be drawn

> cannot be justified as a fair comment on the evidence but instead <u>is more akin to the presentation of wholly new evidence to the jury,</u> which should only be admitted subject to cross-examination, to proper instructions and to the rules of evidence.

*United States v. Klebig*, 600 F.3d 700, 718 (7th Cir.2009) (emphasis added).

In *Klebig*, the court determined that it was prejudicial error for a demonstration of physical evidence during the prosecutor's closing argument to allege new facts that had not been established during the trial. The *Klebig* court was concerned with preserving the defendant's fundamental rights.

> [I]t is important . . . that the inference be reasonable not <u>only to avoid abridging the defendant's right to cross-examine possibly untrue testimony but also to prevent a party from presenting to the jury in closing argument a fact that might have been ruled inadmissible at trial</u> (or at least subject to a limiting instruction) simply by asserting in closing argument that the jury

---

P.2d 1231, 1249 (1999) ("[R]eprosecution is barred where, in the face of egregious prosecutorial misconduct, it cannot be said beyond a reasonable doubt that the defendant received a fair trial.").

13. "The term 'prosecutorial misconduct' is a legal term of art that refers to <u>any</u> improper action committed by a prosecutor, however harmless or unintentional." *State v. Maluia*, 107 Hawai'i 20, 25, 108 P.3d 974, 979 (2005).

could infer it from the evidence that was presented and admitted.

*Klebig,* 600 F.3d at 721 (emphasis added). That is, a defendant's fundamental rights to confront witnesses, test evidence, and to prevent the introduction of possibly inadmissible evidence may be compromised merely upon an assertion in closing argument that the jury could infer the fact from the evidence that was admitted. Closing arguments are not the place to introduce new evidence outside the safeguards of the Hawaiʻi Rules of Evidence. *See State v. Yip,* 92 Hawaiʻi 98, 111, 987 P.2d 996, 1009 (App.1999) ("In closing arguments, it is improper to refer to evidence which is not in the record or has been excluded by the court.").

In this case, during closing argument the prosecutor argued, "You know that Defendant Michael Basham lied to the police." (Emphasis added). In support of this statement, the prosecutor argued that Officer Kopa testified that he identified Bloom and Basham as the drivers of the two cars involved in the accident. The prosecutor contended, "Who could the only source of that information be? Not [Bloom] who had been knocked unconscious. Michael Basham." "In other words, [Basham] took the role of his son as the driver and thus lied to the police."

The ICA held that the "prosecutor made a permissible and reasonable inference based on evidence in the record that Basham misrepresented himself as the driver involved in the collision." *Basham,* 2012 WL 6738798, at *2.

The only evidence relevant to this issue was Officer Kopa's testimony that based on his investigation, he determined that Basham was the driver of the blue car. Officer Kopa was present at the scene in a limited capacity of documenting the minor motor vehicle collision and "nothing more." He attempted to identify the operator of each car and indicated that "if there's no one behind the driver's seat," then the police "try to get witnesses,

... try to ascertain the driver, either by asking or just—anything at the scene that we can see to help us ascertain who was driving."

However, Officer Kopa did not explain how he ascertained that Basham was driving the blue car in this case. When he was specifically asked whether Basham told him that the car was his, Officer Kopa responded, "I don't remember exactly what he said." Basham did not testify, and none of the other witnesses testified as to whether Basham identified himself to the police as the driver, as opposed to the owner, of the car. Thus, it is questionable whether the prosecutor's statement that Basham must have lied to the police because he was the "only source" of the information regarding the identity of the driver was a reasonable inference from the evidence.

 Nevertheless, even assuming this was a reasonable inference, the prosecutor's allegation was not merely that Basham has previously lied. *Cf. Domingo–Gomez v. People,* 125 P.3d 1043, 1050 (Colo.2005) ("The word 'lie' is such a strong expression that it necessarily reflects the personal opinion of the speaker. When spoken by the State's representative in the courtroom, the word 'lie' has the dangerous potential of swaying the jury from their duty to determine the accused's guilt or innocence on the evidence properly presented at trial.").

Rather, the specific allegation was that Basham lied to the police, which is generally perceived by the public as particularly wrongful and may have also constituted the crime of false reporting to law-enforcement authorities.

Since Basham had not been charged with any misconduct relating to the vehicle or the car collision, any evidence that he lied to the police, if the prosecutor had sought to introduce it during trial, would have been subject to HRE Rule 404(b) as evidence of "other acts." [14] The rules provide several evidentia-

---

14. HRE Rule 404(b) (Supp.2011) provides:
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity,

ry safeguards for the admission of such evidence during trial.

Under Rule 404(b), the proponent of the evidence must provide "reasonable notice" of the "date, location, and general nature" of the evidence. In this case, the record does not indicate that the prosecutor gave any notice of Basham's alleged misconduct of lying to the police. The failure to provide notice undermines the purpose of Rule 404(b), which is to "reduce surprise and promote early resolution on the issue of admissibility." Federal Rules of Evidence Rule 404(b) Advisory Committee's Note.[15]

Assuming that the court would have excused pretrial notice based on "good cause shown," see HRE Rule 404(b), the prosecutor's allegation that Basham lied to the police was not subject to the protections set forth in the HRE when "other acts" are sought to be admitted. If such evidence had been introduced during trial, the court would have been required to determine the admissibility of the evidence under HRE Rule 104(b),[16] which requires a court to consider whether there was sufficient evidence that the alleged misconduct actually occurred.

Even if the court had determined that there was sufficient evidence supporting admission of Basham's alleged lie to the police, the evidence would only have been admissible under Rule 404(b) if the alleged lie was probative of another fact "of consequence to the determination of the action." Since the alleged lie would have occurred after the alleged assault by Driver, it does not appear

under the circumstances of this case to have been of consequence to the determination of any issue.

Additionally, pursuant to Rule 403, the court would have been required to weigh the probative value of the evidence against its prejudicial effect.[17] If the evidence was not excluded by any of the applicable rules, the court would still have been required at counsel's request to provide a limiting instruction under HRE Rule 105 regarding the proper purpose for which the evidence was admitted.[18]

Rather than seeking to admit evidence that Basham lied to the police during trial pursuant to the above rules, the prosecutor referenced the alleged lie during closing argument. Thus, Basham had no opportunity to rebut the allegation with evidence. It is apparent that the prosecutor is not permitted to bypass the evidentiary rules in this manner by asking the jury to infer conduct which, if it had been introduced during the trial, would have been subject to the limitations of Rule 404(b). Permitting such an inference to be made during closing argument would be contrary to the purpose of the evidentiary rules, which is to regulate the evidence the jury may use to reach a verdict. See American Bar Association Standards for Criminal Justice [hereinafter "ABA Standards"], at Standard 3–5.8(a) ("In closing argument to the jury, the prosecutor may argue all reasonable inferences from evidence in the record. The prosecutor should not

---

modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.
(Emphases added).

**15.** The notice requirement in HRE Rule 404(b) was modeled after the Federal Rules of Evidence. H. Stand. Comm. Rep. No. 567–94, in 1994 House Journal, at 1088.

**16.** HRE Rule 104 (1993), titled "Preliminary questions," provides in relevant part: "(b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence suffi-

cient to support a finding of the fulfillment of the condition."

**17.** HRE Rule 403 (1993) provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**18.** HRE Rule 105 (1993), titled "Limited admissibility," provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

intentionally ... <u>mislead the jury as to the inferences it may draw.</u>") (emphases added). *Cf. Donnelly v. DeChristoforo*, 416 U.S. 637, 651, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ("It is ... quite 'improper' for a prosecutor to insinuate to the jury the existence of evidence not in the record and which could not be introduced without the privilege of cross-examination.") (Douglas, J., dissenting).

■ Accordingly, even assuming that the prosecutor made a reasonable inference from the evidence by arguing that Basham lied to the police, the allegation was not "legitimate" inasmuch as the wrongful conduct that was inferred may have been inadmissible under the applicable evidence rules. *See Klebig*, 600 F.3d at 721 ("the inference [should] be reasonable ... to prevent a party from presenting to the jury in closing argument a fact that might have been ruled inadmissible at trial (or at least subject to a limiting instruction)."). Because "the prosecutor's argument is likely to have significant persuasive force with the jury," the "scope of argument must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct." *State v. Klinge*, 92 Hawaiʻi 577, 592, 994 P.2d 509, 524 (2000) (brackets omitted) (quoting *State v. Rogan*, 91 Hawaiʻi 405, 413, 984 P.2d 1231, 1239 (1999)).

In light of our determination that the case must be remanded for a new trial, we need not decide whether the prosecutor's improper argument rose to the level of plain error.

## VI.

■ It is well-established "under Hawaiʻi case law that prosecutors are bound to refrain from expressing their personal views as to a defendant's guilt or the credibility of witnesses." *Clark*, 83 Hawaiʻi at 304, 926 P.2d at 209 (citations omitted). *See State v. Marsh*, 68 Haw. 659, 660, 728 P.2d 1301, 1302 (1986); *State v. Cordeiro*, 99 Hawaiʻi 390, 424–25, 56 P.3d 692, 726–27 (2002); *Tuua*, 125 Hawaiʻi at 14, 250 P.3d at 277. <u>But</u> *see State v. Apilando*, 79 Hawaiʻi 128, 142, 900 P.2d 135, 149 (1995) (prosecutor's comment

that defendant "had the greatest motive to lie" because he had the "highest stake in the outcome of the case" was permissible attack on defendant's credibility).

"The rationale for the rule is that 'expressions of personal opinion by the prosecutor are a <u>form of unsworn, unchecked testimony</u> and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued.'" *Marsh*, 68 Haw. at 660, 728 P.2d at 1302 (brackets omitted) (emphasis added) (quoting ABA Standards, Commentary, at Standard 3.89).

■ The prosecutor in this case opened his closing argument by stating that the only critical issue in the case was that of witness credibility. The prosecutor continued, "On behalf of the prosecution, I adamantly state to you, that [Bloom] and [Chavez] have been completely credible witnesses, that they are worthy of your belief." Immediately after communicating this unqualified endorsement of Bloom and Chavez, the prosecutor compared them to Aliikea. The prosecutor argued that "[w]hen a defendant testifies, his credibility is to be weighed as any other witness," but "you need to keep ... in mind" that Aliikea has "no reason to tell you the truth."

The prosecutor's statement was undoubtedly an expression of a personal view on the credibility of the State's witnesses and the guilt of the defendants.[19] *See Marsh*, 68 Haw. at 660–61, 728 P.2d at 1302 (prosecutor improperly expressed personal opinion by stating, "I feel it is very clear and I hope you are convinced, too, that the person who committed this crime was none other than [defendant]," and referring to defense witness's alibi testimony by stating, "I sincerely doubt if she [witness] had seen [defendant] there"); *State v. Sanchez*, 82 Hawaiʻi 517, 534, 923 P.2d 934, 951 (App.1996) (prosecutor improperly asserted "personal evaluation of the credibility of certain witnesses in final argument" by using personal pronoun "I").

■ But more importantly, the implication of the prosecutor's argument, whether

---

19. We do not agree with the Dissent that the prosecutor's comment, "I adamantly state to

you," is merely an introductory phrase or rhetorical device. Dissent at 123, 319 P.3d at 1131.

intended or not, was that Aliikea had no reason to tell the truth because he was a defendant in the case. At that point in the closing argument, the prosecutor had not discussed any of the testimony that had been presented during trial. The prosecutor also offered no reason, based on the evidence, that Aliikea would have no reason to tell the truth, other than Aliikea's status as a defendant.

Defense counsel strongly objected to the prosecutor's statement, arguing in response that he took the prosecutor's comment to mean "you should not believe Aliikea because he's a defendant in the case." [20]

A suggestion that defendants have no reason to tell the truth impinges upon fundamental principles of our system of justice, including the presumption of innocence, the burden of proof upon the government, the right to testify without penalty, and the right to a fair trial with an unbiased jury.

While defense counsel sought to neutralize the prosecutor's statement, the inherent limitations of such efforts have been widely recognized. "The Supreme Court has observed that a prosecuting attorney's 'improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.'" *Marsh*, 68 Haw. at 661, 728 P.2d at 1302 (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).

In light of the "prestige associated with the prosecutor's office" and the "significant persuasive force" the prosecutor's argument is likely to have on the jury, this court has repeatedly recognized that the prosecutor "has a duty to seek justice, to exercise the highest good faith in the interest of the public and to avoid even the appearance of unfair advantage over the accused." [21] *Rogan*, 91 Hawai'i at 412–13, 984 P.2d at 1238–39.

While the prosecutor's argument was specifically directed at Aliikea, the statement clearly implicated Basham as well. Aliikea testified that Basham did not hold Bloom down at any time during the incident. This statement was also consistent with Chavez's first statement to Officer Barrett, which never mentioned that anyone held Bloom to the ground. Because Basham did not testify, his version of the events was essentially presented through Aliikea's testimony. Basham was entitled to rely upon the fact, in deciding whether or not to testify, that Aliikea's testimony would not be attacked as untruthful based upon the prosecutor's generic argument.

This court has held that it is "improper, under article I, section 14 of the Hawai'i Constitution, for the prosecution to make generic accusations during closing argument that a defendant tailored his testimony based solely on the defendant's exercise of his constitutional right to be present during the trial." *State v. Mattson*, 122 Hawai'i 312, 326, 226 P.3d 482, 496 (2010). "[A] generic tailoring argument occurs when a prosecutor states that the defendant was able to sit through the trial and hear the testimony of other witnesses, thereby allowing the defendant the opportunity to shape his or her testimony to fit that of other witnesses, even when there is no evidence that defendant has actually done so." *State v. Walsh*, 125 Hawai'i 271, 282, 260 P.3d 350, 361 (2011) (quoting *Mattson*, 122 Hawai'i at 336, 226 P.3d at 506 (Acoba, J., dissenting, with whom Duffy, J., joined)).

In *Walsh*, the court held that generic tailoring arguments are subject to plain error review because they infringe on the defendant's fundamental rights to confrontation, to a fair trial, to testify on his or her own behalf, and to be present at each criminal proceeding. 125 Hawai'i at 284–85, 260 P.3d

**20.** Although the propriety of the prosecutor's statements was not subsequently raised on appeal, due to the likelihood of retrial on remand, we address this issue to prevent future error. *State v. Gonzalez*, 128 Hawai'i 314, 324, 288 P.3d 788, 798 (2012), *State v. Apollonio*, 130 Hawai'i 353, 359, 311 P.3d 676, 682 (2013).

**21.** *See* Hawai'i Rules of Professional Conduct Rule 3.8 cmt. 1 ("A prosecutor has the responsibility of a <u>minister of justice</u> and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." (Emphasis added)).

at 363–64. The prosecutor in *Walsh* argued during closing argument that the defendant "shaped his demeanor [during his testimony] to appear truthful to the jury, based on statements made by potential jurors regarding" the credibility of a witness who maintained eye contact. *Id.* at 277–78, 291–92, 260 P.3d at 356–57, 370–71. The court held that inasmuch as "[a] defendant's right to be present during voir dire is analogous to a defendant's right to be present during testimony of witnesses, ... a defendant's mere presence during voir dire cannot be used against the defendant to attack his credibility." *Id.* at 291, 260 P.3d at 370. The court explained, "It is ... manifest that the prosecutor's comments regarding Respondent's manner of testifying transformed his presence at trial into an 'automatic burden on his credibility.'" *Id.* at 292, 260 P.3d at 371 (citation omitted).

The court held that although the prosecutor may attack the defendant's credibility based on <u>specific evidence</u> of tailoring, the prosecutor's inference in that case was not drawn from the testimony but based solely on the defendant's rightful presence during a stage of the trial:

> The prosecutor may permissibly cast doubt about the substance of a defendant's testimony by referring to specific evidence suggesting that the defendant engaged in tailoring. However, <u>the prosecutor cannot ask the jury to infer the defendant's lack of credibility from the manner in which he presented his testimony,</u> because that inference, related only to the defendant's presence in the courtroom, burdens the constitutional rights of defendants, specifically the right to be present at trial. Here, <u>the inference that Respondent was not credible was not drawn from testimony,</u> but from his rightful presence during voir dire.

*Id.* at 292, 260 P.3d at 371 (quotation marks, citations and brackets omitted) (emphases added). The *Walsh* court's holding did not "hamstring the prosecution's ability to comment directly on the evidence presented," as "the prosecution is free to refer to the specific inconsistencies and contradictions in a defendant's testimony or with other evidence, without referring to his [or her] presence at trial." *Id.* at 295, 260 P.3d at 374.

■ In the same way that a prosecutor cannot ask the jury to infer a defendant's lack of credibility based on the defendant's rightful presence at trial, a prosecutor cannot ask the jury to infer a defendant's lack of credibility based solely on the fact that he or she is a defendant. In this case, the defendant was penalized for simply being the defendant; the prosecutor's generalized statement inferred that defendants are untrustworthy whenever they choose to testify because they have "no reason to tell the truth." The prosecutor effectively cast doubt on the entirety of Aliikea's testimony as well as on Basham's character by arguing that Bloom and Chavez were trustworthy, with no reason to lie, while Aliikea, as a defendant, had no reason to tell the truth.

Categorical comments informing the jury to treat the defendant's entire testimony as untruthful based on the defendant's status as a defendant undermines the function of the jury as fact finder. As the *Walsh* court recognized, generic arguments that the defendant has tailored his testimony or testified untruthfully, divert the jury from deciding the case based on the evidence. 125 Hawai'i at 297, 260 P.3d at 376. This problem is exacerbated when such arguments are made during closing argument, as the defense does not have any opportunity to respond by presenting evidence:

> Additionally, the statements diverted the jury from its duty to decide the instant case on the evidence, by inviting the <u>jury to convict on the basis of conduct as consistent with innocence as with guilt.</u> Finally, the statements were also made during closing argument, a crucial part of trial. The prosecutor argued that [the defendant] was not credible due to the exercise of his right to be present at trial, without referencing any specific evidence, <u>at a time when [the defendant] could not respond</u> with any evidence.

*Id.* (citing *Mattson*, 122 Hawai'i at 326, 226 P.3d at 496) (quotation marks, citations, brackets and footnote omitted) (emphases added).

■ Generic arguments by the prosecutor that defendants, by virtue of being defendants, have no reason to tell the truth or have the greatest incentive to lie also transform a defendant's decision to testify at trial into an "automatic burden on . . . credibility." *See Walsh*, 125 Hawai'i at 292, 260 P.3d at 371. "[A]lthough . . . the prosecution [is allowed] wide latitude when making closing remarks, . . . a prosecutor's comments may not infringe on a defendant's constitutional rights." *Mattson*, 122 Hawai'i at 325, 226 P.3d at 495. Generic arguments that a defendant is not a credible witness because of the defendant's status, like generic accusations of tailoring, "discourage a defendant from exercising his [or her] constitutional right to testify on his [or her] own behalf." *See Walsh*, 125 Hawai'i at 284–85, 260 P.3d at 363–64 (quotation marks and footnote omitted) (quoting *Mattson*, 122 Hawai'i at 326, 226 P.3d at 496).

"[C]losing argument affords the prosecution (as well as the defense) the opportunity to persuade the jury that its theory of the case is valid, based upon the evidence adduced and all reasonable inferences that can be drawn therefrom." *Rogan*, 91 Hawai'i at 413, 984 P.2d at 1239 (emphasis added) (citing *State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). Permitting the prosecutor to make general arguments that the State's key witnesses should be considered credible because they have "no reason to lie" while comparatively, the defendant should be assumed to be lying because he has "no reason to tell you the truth," is not an argument based on the evidence or a reasonable inference drawn from the evidence.

■ "[T]his court has reiterated [the] view [that]: 'The prosecution has a duty to seek justice, to exercise the highest good faith in the interest of the public and to avoid even the appearance of unfair advantage over the accused.' " *Maluia*, 107 Hawai'i at 29, 108 P.3d at 983 (Acoba, J., concurring) (quoting *State v. Moriwaki*, 71 Haw. 347, 354, 791 P.2d 392, 396 (1990)). "[T]hat the prosecution must be held to a standard higher than 'good faith' is a proposition long established and fundamental to the prosecution's role in the criminal law system. . . . When sight of

this duty is lost, the level of prosecutorial advocacy is depressed. And, the dispensation of justice in our state suffers." *Id.* at 28, 108 P.3d at 982 (citations omitted). "[T]he high regard in which the prosecutor is held rests on his or her position as the representative of the people." *Id.*

■ Accordingly, the prosecutor's "interest . . . in a criminal prosecution is not that [the sovereign] shall win a case, but that justice shall be done." *Id.* (quoting *Berger*, 295 U.S. at 88, 55 S.Ct. 629) (quotation marks omitted). "It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.*

■ Given the prosecutor's important role in our justice system and the danger that permitting generic accusations of a defendant's lack of credibility poses to the perceived fairness of the adversarial process, we hold that it is improper for a prosecutor in summation to make generic arguments regarding credibility based solely upon the status of a defendant. *Walsh*, 125 Hawai'i at 285, 260 P.3d at 364 ("Because fundamental rights are infringed when generic tailoring arguments are made, generic tailoring arguments are subject to plain error review."). Accordingly, a prosecutor may not argue during closing argument that defendants, because they are defendants, have no reason to tell the truth or have the "greatest motive to lie." *Apilando*, 79 Hawai'i at 142, 900 P.2d at 149.

## VII.

Finally, Basham maintains that the evidence was insufficient to prove that he was an accomplice to an assault in any degree.

■ " 'In reviewing the legal sufficiency of the evidence on appeal, the test is whether, viewing the evidence in the light most favorable to the State, substantial evidence exists to support the conclusion of the trier of fact.' " *State v. Kaulia*, 128 Hawai'i 479, 496, 291 P.3d 377, 394 (2013) (quoting *State v. Lubong*, 77 Hawai'i 429, 432, 886 P.2d 766, 769 (App.1994) (ellipses omitted)). " 'Sub-

stantial evidence' is evidence of 'sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion.'" *Id.* (quoting *Lubong*, 77 Hawai'i at 432, 886 P.2d at 769).

 Viewed in the light most favorable to the State, evidence was adduced that Basham pushed Bloom, causing Bloom to fall to the ground, and Basham held Bloom on the ground before Driver jumped onto Bloom. A person of reasonable caution could have concluded based on this evidence that Basham had the intention of promoting or facilitating Driver's commission of assault in the first degree (intentionally or knowingly causing serious bodily injury to another person, HRS § 707–710(1)), and aided, agreed, or attempted to aid Driver in planning or committing the assault. *See* HRS § 702–222(1). Thus, substantial evidence supported the jury's conclusion in this case.

## VIII.

Accordingly, Basham's conviction is vacated based on the circuit court's failure to correct the prosecutor's misstatement of the law on accomplice liability. The case is remanded for a new trial consistent with this opinion.

Dissenting Opinion by NAKAYAMA, J. in which RECKTENWALD, C.J., joins.

I respectfully dissent from the majority's holding that the prosecutor's statements regarding accomplice liability constituted nonharmless prosecutorial misconduct. I further disagree with the majority's conclusion that the prosecutor engaged in misconduct by stating that Basham lied to the police or by commenting upon the credibility of the witnesses.

"Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of 'whether there is a reasonable possibility that the error complained of might have contributed to the conviction.'" *State v. Hauge*, 103 Hawai'i 38, 47, 79 P.3d 131, 140 (2003) (quoting *State v. Balisbisana*, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996)).

We will consider: "(1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." *State v. Tuua*, 125 Hawai'i 10, 13, 250 P.3d 273, 276 (2011) (quoting *State v. Rogan*, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999)). Where defense counsel did not object at trial to the prosecutor's statements, on appeal we review the statements for plain error. *State v. Wakisaka*, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003). "[U]nder Hawai'i's plain error doctrine, if Petitioner's substantial rights or the integrity of the proceedings were affected, then plain error review is appropriate." *State v. Miller*, 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010).

1. **The prosecutor's statements regarding accomplice liability did not constitute prosecutorial misconduct**

During closing argument, the prosecutor discussed the jury instructions regarding accomplice liability as follows:

[T]he concept of accomplice liability was explained to you. A person is an accomplice of another if in the commission of Assault in the First Degree, with intent to promote or facilitate the commission of Assault in the First Degree, the person aids or agrees or attempts to aid the person in the planning or the commission of the offense.

Let's define a couple of those words and put it in everyday English that we can understand.

A person is an accomplice if with intent to promote—what does "promote" mean? It simply means for our purposes to encourage, the desire to bring about.

. . .

. . . The term "promote" means to encourage.

What does the word "facilitate" mean? Using your everyday life experience, that's a rather big word, to facilitate. How about to bring about, that's what facilitate means. Facilitate, for those of you who studied Latin, might be based in the root

of facile. What does facile mean? Easy or to make easy or to bring about.

The defense objected at trial stating:

> [T]he words "intent to promote" is used in very narrow circumstances, meaning that with regard to accomplice liability proof must be had beyond a reasonable doubt that the defendant had the intent to promote the commission of the particular offense. And [the prosecutor's] use of it is a far cry from what the legal definition is under the Hawai'i case law and intent has to be construed in terms of the intentional state of mind that the court has given. So his current argument is highly misleading and prejudicial if you let it stand.

The court overruled the objection.

Before the ICA, on application for writ of certiorari to this court, and during oral argument before this court, Basham maintained that he had no objection to the State's definitions of the words promote and facilitate; his objection concerned the purported de-emphasizing of the intent element of accomplice liability. Specifically, in his application for writ of certiorari to this court, Basham argued that "[b]y taking the terms 'promote' and 'facilitate' out of its statutory context, defining them separate and apart from the whole phrase 'intent to promote or facilitate the commission of the offense,' the prosecutor merged the state-of-mind element with the conduct element for accomplice liability." (Emphasis added).

The majority opinion does not address this argument. Indeed, Basham's contention that providing these definitions de-emphasized the necessary finding of intent and constituted a misstatement of the law is unpersuasive because immediately before providing the definitions, the prosecutor correctly stated the requisite intent under the theory of accomplice liability. Instead, the majority concludes that the State committed prosecutorial misconduct by essentially amending the jury instructions and misdefining "promote" and "facilitate." Majority at 109–10, 319 P.3d at 1117–18.

The majority correctly summarizes the rules regarding jury instructions. Majority at 110, 319 P.3d at 1118. The court may, upon agreement of the parties, instruct the jury on the law of the case, but the court may not orally "qualify, modify or explain" these instructions once given. Majority at 110, 319 P.3d at 1118 (emphasis omitted) (quoting Hawai'i Rules of Penal Procedure (HRPP) Rule 30(e)). Conversely, "each party shall be allowed to fully and fairly state the party's theory of the case and the reasons that entitle the party to a verdict." HRPP Rule 24.1(b). But, the parties "shall not assume to instruct the jury upon the law, in such manner as to encroach upon the function of the court to so instruct the jury." Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 17(b).

In this case, it is unclear whether the State's brief "everyday English" definitions encroached upon the court's role in instructing the jury on the law. In closing arguments, it is common for parties to use simplified language and to draw analogies to explain to the jury how to apply the law to the facts of the case. Basham defined the legal term "conscious object," from the jury instruction regarding "intent," as "whenever [Basham] did something it was in his mind." Basham then explained that "proof beyond a reasonable doubt is this[:] At the end of the day you got to—you got to be able to say eh, no question in my mind, this is the only way it could have happened." In this context, the State's definitions of "promote" and "facilitate" appear to be analogous examples of parties' routine rephrasing of the law during arguments to the jury.

However, even if we were to conclude that the State erroneously assumed the court's role in instructing the jury, this only constitutes reversible prosecutorial misconduct if it was not harmless beyond a reasonable doubt. Here, because the State did not materially alter the court's jury instruction on accomplice liability, there is no possibility that any misconduct on the part of the prosecution contributed to the conviction. As the majority notes, the accomplice liability instruction and the statute from which it was derived do not provide definitions of the words "promote" and "facilitate." See Majority at 107, 319 P.3d at 1116 (citing HRS § 702–222). However, the majority directs us to the commentary on the Model Penal

Code for guidance that "makes clear that 'intent to promote or facilitate' means to have the <u>conscious objective of bringing about the commission of the offense.</u>" Majority at 108, 319 P.3d at 1117 (emphasis in original).

During its closing, the State defined "promote" as "to encourage, the desire to bring about" and "facilitate" as "to bring about."[1] There is no meaningful difference between "having the intent to encourage or the desire to bring about" and "having the conscious objective of bringing about." The State's definition did not reduce the "culpability necessary to satisfy the statutory definition of an accomplice," as the majority contends. Majority at 109, 319 P.3d at 1118. Because there is no reasonable possibility that the State's definitions may have contributed to Basham's conviction, the majority errs in vacating Basham's conviction and remanding this case for a new trial. The failure of the circuit court to *sua sponte*, with no objection from defense counsel, interrupt the closing argument of the prosecutor was not plain error.

## 2. The trial court did not plainly err by not *sua sponte* interrupting the prosecutor's argument that Petitioner lied to the police

During closing argument, the prosecutor stated:

> <u>You know that Defendant Michael Basham lied to the police.</u> How do you know that? When Officer Keola Kopa, the second police officer who testified, he had the suit and the—the stubble, he told you his only job at the scene was to document the minor motor vehicle collision. And whom did he identify as the operators; Steven Bloom, Michael Basham. Who could the only source of that information be? Not Steven Bloom who had been knocked unconscious. Michael Basham. <u>In other words, he took the role of his son as the driver and thus lied to the police.</u>

(Emphasis added). The defense did not object to this statement at trial, but alleged for

the first time on appeal to the ICA that the prosecutor committed misconduct by stating that Basham had lied.

"During closing argument, a prosecutor 'is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence.'" *Tuua*, 125 Hawai'i at 14, 250 P.3d at 277 (quoting *State v. Clark*, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996)). "'[T]he prosecutor as well as defense counsel has a right to present his [or her] impressions from the evidence, if reasonable and may argue every legitimate inference.'" *Clark*, 83 Hawai'i at 305, 926 P.2d at 210 (quoting *Ex parte Waldrop*, 459 So.2d 959, 961 (Ala.1984)). In the past, this court has approved of prosecutorial commentary on evidence including:

> (1) arguing that the defendant, as well as some of his witnesses, were testifying falsely whereas the prosecution's witnesses were not; (2) "highlighting the fact that the evidence adduced at trial did not comport with defense counsel's assertions during opening statements," and (3) "comment[ing] during closing argument that, '[w]hen the defendant comes in here and tells you that he was not on cocaine ... it's a cockamamie story and it's asking you [ (*i.e.*, the jury) ] to take yourselves as fools.'"

*Hauge*, 103 Hawai'i at 56, 79 P.3d at 149 (alterations in original) (internal citations omitted). This court has also approved of a prosecutor's "questions and remarks regarding [a defendant's] failure to 'explain away' the DNA evidence." *Id.*

Here, the prosecutor commented that, because Officer Kopa concluded that Basham was the driver, Basham must have lied and told Officer Kopa that he was the driver. Although this was not the only possible conclusion, it was a reasonable inference. It constituted a legitimate conclusion based on the evidence.

The majority seems to contend that the Hawai'i Rules of Evidence (HRE), and specifically HRE Rules 403 and 404 apply to

---

**1.** Contrary to the majority's contention, the State did not define "facilitate" as "to make easy," but instead merely explained that "facilitate" derived

from the latin "facile," meaning "to make easy or to bring about." *See* Majority at 108, 319 P.3d at 1117.

limit the range of permissible arguments during closing arguments. *See* Majority at 113–15, 319 P.3d at 1121–23. The majority states that because evidence of Basham's purported lies may have been inadmissible under the HRE, it was impermissible for the State to raise this argument during its closing argument. Majority at 114–15, 319 P.3d at 1122–23.

The majority's attempt to extend the HRE to closing argument is incorrect. Neither party may introduce new evidence during its closing argument to the jury. The parties must instead make arguments and draw inferences from the evidence already on the record. Where a party is not attempting to introduce new evidence, the HRE does not apply. Here, the State's arguments were reasonable inferences and not an attempt to sidestep the HRE and impermissibly introduce new evidence. Basham was not unfairly prejudiced by the inference because he had the opportunity to respond during his own closing argument.

### 3. The Prosecutor's statements regarding Aliikea's credibility should not be recognized *sua sponte* as plain error by this court

The majority states, *sua sponte,* that the prosecutor impermissibly expressed his personal opinion regarding the credibility of the State's witnesses and defendant Aliikea. The majority concludes that the following statements from the prosecution are objectionable:

> On behalf of the prosecution, I adamantly state to you, that Mr. and Mrs. Bloom have been completely credible witnesses, that they are worthy of your belief. They have no axe to grind, no revenge to be had. They did not know the Defendants Basham [and Aliikea] before this incident. They have absolutely no reason to fabricate or otherwise make up the accounts that they have recited to you in explicit detail.
>
> Defendant Aliikea ... on the other hand, has decided to testify, which is his right. When a defendant testifies, his credibility is to be weighed as any other witness. But you need to keep something in mind. Defendant Aliikea ... has abso-

lutely no reason to tell you the truth. So the selection or the choice before you in weighing the credibility of the witness is this. Your willingness to believe two people who have no reason to lie to you versus one person who has no reason to tell you the truth.

(Emphasis added). Defense counsel failed to object to these statements at trial, on appeal to the ICA, or before this court and therefore they must be reviewed for plain error.

This court must exercise restraint when noticing plain error *sua sponte.* "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." HRPP Rule 52(b). The plain error standard of review will be applied to "correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Miller,* 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010) (emphasis omitted) (quoting *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)). Although the power to notice plain error is discretionary, "our power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *State v. Nichols,* 111 Hawai'i 327, 336, 141 P.3d 974, 983 (2006) (quoting *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)). While we have occasionally recognized plain error *sua sponte,* "it is only appropriate to do so in extraordinary circumstances." *State v. Miller,* 122 Hawai'i 92, 141–42, 223 P.3d 157, 206–07 (2010) (Dissent, Nakayama, J.). Here, even if the prosecutor's statements regarding the credibility of the witnesses rose to the level of misconduct, they were not so grave as to warrant *sua sponte* plain error review.

While the State is barred from expressing "personal views," it is free to present arguments regarding the credibility of witnesses drawn from reasonable inferences. *Clark,* 83 Hawai'i at 304, 926 P.2d at 210. In *State v. Nakoa,* 72 Haw. 360, 817 P.2d 1060 (1991),

we concluded that a prosecutor did not express impermissible personal beliefs when she stated, "I think ... the police officers who testified are trying their best to be as accurate as they could in their recollection of the incident that occurred." 72 Haw. at 371, 817 P.2d at 1066. Similarly, this court has approved a prosecutor's comments that invite the jury to determine whether a defendant was telling the truth. *See State v. Ganal,* 81 Hawai'i 358, 376, 917 P.2d 370, 388 (1996). This court has also held that "arguing that the defendant, as well as some of his witnesses, were testifying falsely whereas the prosecution's witnesses were not," was acceptable conduct. *State v. Hauge,* 103 Hawai'i 38, 56, 79 P.3d 131, 149 (citing *State v. Cordeiro,* 99 Hawai'i 390, 425, 56 P.3d 692, 727 (2002)).

Here, the prosecutor did not express his personal views, but instead made general statements regarding the credibility of the witnesses. During his closing the prosecutor repeatedly used the phrases "On behalf of the prosecution" and "I adamantly state to you" as introductory phrases and rhetorical devices. In the declaration at issue, the prosecutor stated that the State's witnesses "are worthy of your belief." The emphasis of the statement was that the credibility of the witnesses was to be determined by the jury.

The prosecution's statements also do not constitute an impermissible generic tailoring argument. A generic tailoring argument only occurs if, despite the lack of evidence to support the proposition, the prosecution argues that due to the defendant's presence during the trial the defendant had the opportunity to shape his or her testimony. *State v. Walsh,* 125 Hawai'i 271, 282, 260 P.3d 350, 361 (2011). The majority contends that the prosecution is also barred from alleging that the defendant lacks credibility solely because he or she is a defendant. Majority at 118, 319 P.3d at 1126. If such an argument were based solely on the defendant's status, it would be impermissible because it is not reasonable to infer that all defendants lie. However, " '[w]here the evidence presents two conflicting versions of the same events, a party may reasonably infer, and thus, argue, that the other side is lying.' " *Clark,* 83 Ha-

wai'i at 305, 926 P.2d at 210 (internal citations omitted) (quoting *State v. Abeyta,* 120 N.M. 233, 901 P.2d 164, 177–78 (1995)). Here, the prosecution did not allege that Aliikea was being untruthful simply because he was the defendant. The prosecution alleged that Aliikea was lying because his testimony regarding his and Basham's conduct conflicted with the testimony of the State's witnesses. There is nothing improper about such an argument and it does not rise to the level of seriousness to warrant *sua sponte* plain error review.