**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000689
12-NOV-2021
07:52 AM
Dkt. 74 SO**

NO. CAAP-20-0000689

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
CHANSE HIRATA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1FFC-18-0000756)

**SUMMARY DISPOSITION ORDER**
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

A jury found Defendant-Appellant Chanse **Hirata** guilty of Continuous Sexual Assault of a Minor Under the Age of Fourteen Years. Hirata appeals from the **Judgment** of Conviction and Sentence entered by the Circuit Court of the First Circuit on August 5, 2019.[1] For the reasons explained below, we affirm the Judgment.

Hirata was indicted by an Oʻahu grand jury on June 29, 2018. He was charged with Continuous Sexual Assault of a Minor Under the Age of Fourteen Years, in violation of Hawaii Revised Statutes (**HRS**) § 707-733.6. He pleaded not guilty.

Trial began on May 9, 2019. The complaining witness (**CW**) was 11 years old at the time of trial. CW's mother (**Mother**) and Hirata's girlfriend (CW's **Aunt**) are sisters. CW called Hirata "Uncle Makani." Hirata and Aunt lived with Hirata's

---

[1] The Honorable Catherine H. Remigio presided.

parents and brother. Hirata and Aunt began watching CW when CW was a baby, while Mother was finishing high school. CW would stay overnight at Hirata's and Aunt's house once a week from the time she was five or six years old until she turned ten.

CW testified that Hirata began touching her when she was around seven years old. Hirata kissed CW and put his tongue in her mouth more than 10 times, on different days. Hirata put his penis in CW's mouth more than 10 times, on different days. Hirata touched CW's breasts with his hands or mouth more than 10 times, on different days. Hirata put his fingers in CW's vagina more than 10 times, on different days. Hirata put his tongue inside CW's vagina more than 10 times, on different days. Hirata put his finger in CW's anus more than 10 times, on different days. Hirata put his tongue in CW's anus more than 10 times, on different days. Hirata put his penis in CW's anus one or two times. Hirata grabbed CW's hands and moved them "up and down" on his penis more than 10 times, on different days. CW described several of the incidents in more detail in response to further questions.

Hirata testified in his own defense. He denied all of CW's allegations.

On May 16, 2019, the jury found Hirata guilty as charged. The Judgment was entered on August 5, 2019. Hirata was sentenced to 20 years in prison with credit for time served. This appeal followed.

Hirata contends that he was denied a fair trial because the deputy prosecuting attorney (**DPA**) committed misconduct during closing argument. Hirata did not object to any part of the State's closing or rebuttal arguments.

> Normally, an issue not preserved at trial is deemed to be waived. But where plain errors were committed and substantial rights were affected thereby, the errors may be noticed although they were not brought to the attention of the trial court. Accordingly, an alleged error may be corrected on appeal unless it was harmless beyond a reasonable doubt.

State v. Salavea, 147 Hawai'i 564, 601, 465 P.3d 1011, 1048 (2020) (Nakayama, J., dissenting) (cleaned up).

"A defendant's contention . . . that prosecutorial misconduct resulted in the denial of the defendant's right to a fair trial is a question of constitutional law, which we review de novo." Salavea, 147 Hawai'i at 575, 465 P.3d at 1022 (citation omitted). "When reviewing allegations of prosecutorial misconduct, the following factors are considered: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." Id. at 581, 465 P.3d at 1028 (citation omitted).

### 1. Nature of the conduct.

Hirata argues that the DPA improperly offered her personal opinions about the witnesses' credibility. It is "well-established under Hawai'i case law that prosecutors are bound to refrain from expressing their personal views as to a defendant's guilt or the credibility of witnesses." Salavea, 147 Hawai'i at 582, 465 P.3d at 1029 (quoting State v. Basham, 132 Hawai'i 97, 115, 319 P.3d 1105, 1123 (2014)) (additional citations omitted). "Prosecutors may, however, cite to specific facts or evidence indicating the lack of trustworthiness of the witness or defendant when discussing a witness or defendant's testimony during summation." Id. (underscoring added) (citing State v. Walsh, 125 Hawai'i 271, 295, 260 P.3d 350, 374 (2011) ("[T]he prosecution is free to refer to the specific inconsistencies and contradictions in a defendant's testimony or with other evidence.") (underscoring added)).

In closing argument the DPA told the jury:

> Now, at the beginning of this trial I told you you were not gonna hear about DNA evidence. You weren't gonna see surveillance videos. You weren't gonna hear from eyewitnesses because in a case like this, there is [sic] none. But you would hear from the one person that lived through it, and at the end of this, it comes down to that one person, comes down to [CW]. And it also comes down to one question, is [CW] believable?

> Now, the Court gave you the jury instructions that you all have in front of you, and on page 8, there are [sic] a list of factors that you can consider when you deliberate to determine if a witness is credible. So you look at their demeanor, their candor, lack of motive, and if what they say makes sense.
>
> So when you look at the factors -- and I'll go through them with you, ladies and gentlemen -- the answer is clear to this question. Yes, [CW] is believable. And because [CW] is believable, it's -- it is the testimony that has a convincing force upon you that counts, and the testimony of even a single witness, if believed, can be sufficient to prove a fact.
>
> So let's go through the factors of [CW]'s credibility.

The DPA then argued about specific facts and evidence supporting the credibility of CW's testimony. She cited testimony by CW, Mother, CW's father, a police officer and police detective who separately interviewed CW, a physician who examined CW, and the clinical psychologist who was qualified as an expert in clinical psychology with an expertise in the dynamics of child sexual abuse. The DPA did not simply express her personal view about CW's credibility. The argument was not improper. Salavea, 147 Hawaiʻi at 582, 465 P.3d at 1029.

However, the DPA also argued:

> Now, in a few moments, the defense is gonna get the opportunity to speak to you, and you heard from the defense's witnesses, his mom, his dad, his girlfriend. And you have to gauge their credibility with the same factors as we discussed earlier that are on page 8 of your jury instructions.
>
> Additionally, the defendant also testified, and the jury instructions say that when a defendant testifies, his credibility is to be tested in the same manner as any other witness. So we still need to use -- or you still need to use those factors on page 8.
>
> So is the defense's story believable? We look at the same factors. They have bias. ***They have a motive to lie.*** What they said doesn't make sense, and at times, they even contradicted each other. The defense's story is not believable, and this is what their story is.
>
> They never saw anything, none of them. His mom, his dad, his girlfriend never saw anything. Never. So because they didn't see anything, it never happened. But we know that this happened at night when they were sleeping. His mom and dad were in a separate room. They didn't even know where [Hirata], [CW], [Aunt] were. They couldn't have seen anything.

(Emphasis added.)  In State v. Austin, 143 Hawaiʻi 18, 422 P.3d 18 (2018), a majority of the supreme court held that "a prosecutor's assertion that a defendant or witness lied to the jury is improper and should not be permitted."  Id. at 56, 422 P.3d at 56.[2]  The DPA's argument about Hirata's parents and his girlfriend's (Aunt's) not having the ability to perceive Hirata's alleged misconduct was supported by reference to specific evidence.[3]  However, it was improper to argue they had "a motive to lie."

As to Hirata's credibility, the DPA did not refer to any specific facts or evidence showing that Hirata had a motive to lie.  "A statement about a witness's credibility that is made without reference to the evidence or facts supporting the assertion amounts to an expression of personal opinion."  Salavea, 147 Hawaiʻi at 582, 465 P.3d at 1029 (citation omitted).  The DPA's argument suggested to the jury that Hirata had a motive to lie simply because he was the defendant.  "[A] prosecutor cannot ask the jury to infer a defendant's lack of credibility based solely on the fact that [they are] a defendant."  Basham, 132 Hawaiʻi at 117, 319 P.3d at 1125.  Prosecutors are prohibited from making "generic arguments regarding a defendant's credibility"; that is, "arguments that are uncoupled from evidence showing the defendant has a particular interest in the outcome separate from the generic interest shared by all defendants in criminal cases."  Salavea, 147 Hawaiʻi at 585 n.29, 465 P.3d at 1032 n.29.  A categorical "suggestion that defendants have no reason to tell the truth impinges upon fundamental principles of our system of justice, including the presumption of

---

[2]    Austin was decided on June 29, 2018, almost one year before the DPA gave her closing argument in Hirata's case.

[3]    The DPA argued, "we know that this happened at night when [Hirata's parents] were sleeping.  His mom and dad were in a separate room.  They didn't even know where [Hirata, CW, and Aunt] were.  They couldn't have seen anything."  The DPA also cited the conflict in testimony between Hirata and Aunt (who said "they were [both] there every night") and Hirata's parents (who said Aunt "wasn't there -- around all the time").

innocence, the burden of proof upon the government, the right to testify without penalty, and the right to a fair trial with an unbiased jury." Basham, 132 Hawaiʻi at 116, 319 P.3d at 1124.

### 2.   Curative instruction.

No curative instruction was given because Hirata did not object to the DPA's argument.

### 3.   Evidence against the defendant.

The evidence against Hirata was overwhelming.  The trial was more than a swearing contest between the complaining witness and the defendant, as was the case in State v. Rogan, 91 Hawaiʻi 405, 415, 984 P.2d 1231, 1241 (1999) ("There were no independent eyewitnesses or conclusive forensic evidence[.] . . . [T]his case was based on the Complainant's version of the events against Rogan's version.").  In this case, the testimony by CW, Mother, CW's father, the police officer and police detective who separately interviewed CW, the physician who examined CW, and the clinical psychologist who testified as an expert in the dynamics of child sexual abuse was consistent and compelling.  The witnesses who testified for Hirata (his parents and girlfriend) were subject to impeachment for lack of opportunity to perceive. "Where evidence of guilt is so overwhelming as to outweigh the inflammatory effect of improper comments, [the supreme] court has held the error harmless beyond a reasonable doubt and has declined to vacate the defendant's conviction." Austin, 143 Hawaiʻi at 56, 422 P.3d at 56 (Pollock, J., concurring in part) (citation omitted).

Here, the DPA's misconduct was limited and was not repeated.  Thus, "[g]iven the strength of the evidentiary record in this case . . . there is not a reasonable possibility that the jury would have reached a different verdict in the absence of the prosecutor's improper comment[].  The misconduct was therefore harmless beyond a reasonable doubt." See Austin, 143 Hawaiʻi at 56-57, 422 P.3d at 56-57 (Pollock, J., concurring in part).

For the foregoing reasons, the Judgment entered by the circuit court on August 5, 2019, is affirmed.

DATED:  Honolulu, Hawaiʻi, November 12, 2021.

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge