Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000464
30-APR-2024
07:52 AM
Dkt. 88 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---OOO---

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
ERIK WILLIS, Defendant-Appellant

NO. CAAP-22-0000464

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-20-0000887)

APRIL 30, 2024

LEONARD, ACTING CHIEF JUDGE, AND HIRAOKA AND WADSWORTH, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

Defendant-Appellant Erik Willis (**Willis**) appeals from the Amended Judgment of Conviction and Sentence (**Amended Judgment**), entered on July 20, 2022, in the Circuit Court of the First Circuit (**Circuit Court**).[1/] After a jury trial, Willis was convicted of Attempted Murder in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 705-500[2/] and 707-701.5[3/]

---

[1/] The Honorable Kevin A. Souza presided.

[2/] HRS § 705-500 (2014) states, in pertinent part:

> **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
>
> . . . .
>
> (b) Intentionally engages in conduct which, under the circumstances as the person believes them to

(continued...)

On appeal, Willis contends that: (1) the Circuit Court "erred in denying [Willis's] Motion to Dismiss the Indictment for lack of probable cause"; (2) the Circuit Court "erred in denying [Willis's] Motion to Suppress Identification of [Willis]"; (3) "[t]he prosecutor committed multiple, continuing, and egregious acts of misconduct throughout the course of the trial and especially during closing arguments that violated [Willis's] constitutional right to a fair trial"; (4) the Circuit Court "erred in denying [Willis's] Motion for Judgment of Acquittal"; and (5) the Circuit Court "abused its discretion in denying [Willis's] Motion for New Trial based on sufficiency of the evidence and prosecutorial misconduct."

We hold that the Circuit Court did not err in denying Willis's motion to dismiss the indictment for lack of probable cause, and in denying Willis's motion to suppress the complaining witness's (**M.K.**) identification of Willis as her assailant. In denying the motion to suppress, the Circuit Court did not clearly err in determining that M.K.'s identification was sufficiently reliable for presentation to the jury under the totality of the circumstances, based on the court's assessment of the factors established in State v. Kaneaiakala, 145 Hawaiʻi 231, 450 P.3d 761 (2019), for evaluating an eyewitness identification obtained through an impermissibly suggestive procedure.

We further hold, however, that the deputy prosecuting attorney (**DPA**) committed prosecutorial misconduct[4/] during his closing argument, when he argued to the jury that Willis was

(...continued)

> be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

[3/] HRS § 707-701.5 (Supp. 2018) states, in pertinent part:

> **Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person; provided that this section shall not apply to actions taken under chapter 327L.

[4/] "The term 'prosecutorial misconduct' is a legal term of art that refers to *any* improper action committed by a prosecutor, however harmless or unintentional." State v. Maluia, 107 Hawaiʻi 20, 25, 108 P.3d 974, 979 (2005).

depicted in a surveillance video after the attack leaving a work sink, and "we know from [witness] Edward Leal [(**Leal**)] that [Willis] washed his hands and his face because he had blood on them." The DPA's statement referred to evidence of blood that was not in the record and misrepresented the testimony of the identified witness. Another statement by the DPA minutes later – that "after he stabbed [M.K.], [Willis] got blood on [his t-shirt]" – also introduced new evidence of blood in closing argument and amounted to misconduct. Based on the serious nature of the DPA's conduct, the lack of a curative instruction, and the heavy dependence of the conviction on M.K.'s credibility, we conclude that the DPA's improper statements about blood on Willis and his shirt were not harmless beyond a reasonable doubt, and his conviction must therefore be vacated. Relatedly, we hold that the Circuit Court erred in denying Willis's motion for a new trial based on prosecutorial misconduct in introducing this new blood evidence in closing argument.

Finally, we hold that the Circuit Court did not err in denying Willis's motion for judgment of acquittal. Viewing the evidence as we must in the light most favorable to the prosecution, there was sufficient evidence to support a prima facie case so that a reasonable mind might fairly conclude that Willis was M.K.'s assailant and was guilty beyond a reasonable doubt of attempted murder in the second degree. This evidence included M.K.'s testimony regarding the attack and surveillance videos that largely corroborated M.K.'s description of her attacker.

Accordingly, we vacate the Amended Judgment based on prosecutorial misconduct and remand the case for a new trial.

## I. Background

On July 8, 2020, at about 1:45 p.m., M.K., then aged 17, was stabbed while lying on her stomach on the beach in Kahala near 4671 Kahala Avenue. M.K. sustained life-threatening injuries, lost a significant amount of blood, and was rushed to the hospital for emergency medical treatment. Fortunately, she survived the stabbing.

During the course of their investigation, Honolulu Police Department (**HPD**) officers recovered surveillance video footage from 5605 Haleola Street, Bus No. 532, 4671 Kahala Avenue, 4635 Kahala Avenue, and 948 Pueo Street. The recovered video footage depicts events recorded on July 8, 2020, at the following times:[5/]

- 12:29 p.m.: The video footage from 5605 Haleola Street shows "a fair[-]skinned man, with dark curly hair, a blue disposable face mask, a clean white t-shirt, tan pants, and dark colored shoes with white striping on the side." HPD Corporal Matthew Motas (**Corporal Motas**), who had mentored Willis during the period from September 2015 to January 2016, positively identified the man in the video footage as Willis.
- 1:11 to 1:25 p.m.: Bus 532's video footage shows "a fair[-]skinned man, with dark curly hair, a blue disposable face mask, a clean white t-shirt, tan pants, and dark colored shoes. Bus 532 picks up the man at about 1:11 p.m. at the bus stop located at the intersection of Kalanianaole Highway and Halemaumau Street [and] travels to Kahala Avenue [before] the man exits the bus at about 1:25 p.m. at a bus stop located near 4671 Kahala Avenue." Corporal Motas positively identified the man in the video footage as Willis.
- 1:26 p.m.: The video footage from 4671 Kahala Avenue shows "a man with dark curly hair, a white t-shirt, tan pants, and dark shoes with white marking on the side. The man is walking on a beach access walkway from Kahala Avenue towards the beach."
- 1:46 p.m.: The video footage from 4635 Kahala

[5/] The corresponding descriptions of the video footage are drawn primarily from the uncontested findings of fact in the Circuit Court's March 22, 2021 "Findings of Facts, Conclusions of Law and Order Denying [Willis's] Motion to Dismiss the Indictment With Prejudice Filed on November 16, 2020." See State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019) (unchallenged findings of fact are binding on appeal).

Avenue shows "a person with dark curly hair, no shirt, tan pants, and dark shoes run across a construction site immediately adjacent to the property. The man comes running from the direction of the beach[,] runs to a sink[,] and appears to wash himself off."

- 3:56 p.m. to 4:00 p.m.: The video footage from 948 Pueo Street shows "a fair[-]skinned man, with dark curly hair, a blue disposable face mask, a soiled white t-shirt, tan pants, and dark colored shoes with white striping on the side." Corporal Motas positively identified the man in the video footage as Willis.
- 4:15 p.m. to 4:26 p.m.: Bus 532's video footage shows "a fair[-]skinned man, with dark curly hair, a blue disposable face mask, a soiled white t-shirt, tan pants, and dark colored shoes. Bus 532 picks up the man at about 4:15 p.m. at a bus stop located on Pueo Street. Bus 532 travels to Kalanianaole Highway and the man exits the bus at about 4:26 p.m. at a bus stop located at the intersection of Kalanianaole Highway and Halemaumau Street." Corporal Motas positively identified the man in the video footage as Willis.
- 4:35 p.m.: The video footage from 5605 Haleola Street shows "a fair[-]skinned man, with dark curly hair, a blue disposable face mask, a soiled white t-shirt, tan pants, and dark colored shoes with white striping on the side." Corporal Motas positively identified the man in the surveillance video footage as Willis, who "is depicted walking toward his grandparents' house."

(Record citations omitted.)

On July 11, 2020, HPD officers arrested Willis at his grandparents' home in Niu Valley. They did not have permission or a warrant to enter the home. Once inside, the police came across shoes and a shirt that matched the suspect's clothing.

Nearly two hours after arresting Willis, the police seized the shoes and the shirt from the home.

On July 24, 2020, a grand jury indicted Willis for attempted murder in the second degree.

On November 16, 2020, Willis filed a motion to dismiss the indictment with prejudice, a motion to suppress evidence and statements obtained pursuant to the warrantless entry and search, and a motion to suppress the identification of Willis as M.K.'s assailant. The Circuit Court heard the motion to dismiss the indictment on January 28, 2021, and the motions to suppress on January 28 and February 23, 2021.

The Circuit Court denied the motion to dismiss the indictment and the motion to suppress the identification of Willis, but granted the motion to suppress the shoes, the shirt and the statements Willis made when he was arrested. The State appealed from the order granting Willis's motion to suppress. The Hawaiʻi Supreme Court accepted the State's application for transfer and affirmed the order granting the motion to suppress. State v. Willis, 150 Hawaiʻi 235, 238, 241, 500 P.3d 420, 423, 426 (2021).

A jury trial began on March 29, 2022. Numerous witnesses, including M.K. and Corporal Motas, testified for the State. In her testimony, M.K. recounted the stabbing attack, described her identification of Willis as her assailant three days after the attack, and identified Willis in the courtroom as her assailant. After the State rested, Willis made an oral motion for a judgment of acquittal, arguing that the evidence was insufficient to support a prima facie case such that a reasonable jury could find guilt beyond a reasonable doubt. The Circuit Court denied the motion.

On April 7, 2022, the jury found Willis guilty as charged of attempted murder in the second degree.

On April 18, 2022, Willis filed a renewed motion for entry of a judgment of acquittal or, in the alternative, for a new trial. He argued that the jury's verdict was not supported by substantial evidence and that the DPA committed prosecutorial misconduct by, among other things, arguing from evidence not in

the record and making arguments that had no factual support in the record. Following a June 6, 2022 hearing, the Circuit Court denied the motion.

The Circuit Court entered a Judgment of Conviction and Sentence on July 14, 2022, and the Amended Judgment on July 20, 2022.

Willis filed a timely notice of appeal.

## II. Discussion

### A. Motion to Dismiss the Indictment

Willis contends that the Circuit Court erred in denying his motion to dismiss the indictment, because the evidence was insufficient to establish probable cause as to the elements of the charged offense. We review de novo a circuit court's order denying a motion to dismiss an indictment based on sufficiency of the evidence to support the indictment. State v. Taylor, 126 Hawaiʻi 205, 215, 269 P.3d 740, 750 (2011).

We have found that similar challenges were rendered moot by the defendant's subsequent conviction after trial, based on the supreme court's ruling in In re Doe, 102 Hawaiʻi 75, 78, 73 P.3d 29, 32 (2003). See, e.g., State v. Torres, 122 Hawaiʻi 2, 14 n.7, 222 P.3d 409, 421 n.7 (App. 2009), aff'd and corrected on other grounds, 125 Hawaiʻi 382, 262 P.3d 1006 (2011). In any event, based on our review of the record, we reject Willis's contention that there was insufficient evidence to support the indictment.

### B. Motion to Suppress M.K.'s Identification of Willis

Willis contends that the Circuit Court erred in denying his motion to suppress identification. Specifically, he argues that based on the factors set forth in Kaneaiakala, 145 Hawaiʻi at 242-44, 450 P.3d at 772-74, the eyewitness identification of Willis by M.K. was unreliable and should have been suppressed.[6]

On March 22, 2021, the Circuit Court entered its "Findings of Facts, Conclusions of Law and Order Denying

[6] Willis does not challenge the denial of his motion to suppress the identification made by Corporal Motas.

[Willis's] Motion to Suppress Identification of [Willis] Filed on November 16, 2020" (**FOFs/COLs**). The following FOFs are uncontested and thus binding on appeal,[7] see Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435:

> 1. On July 8, 2020 at about 1:20 p.m., M.K. went to the beach fronting 4663 Kahala Avenue by herself . . . . M.K. sat about two or three car lengths from the girl with the computer. When M.K. found her spot on the beach, she laid her pareo on the sand next to a wall and placed her bag down. After that, she was standing up, using her phone, looking towards the beach, and just kind of looking around. While she was looking around, M.K. saw a guy in a t-shirt and jeans with a blue clinical face mask on, walking down the beach. M.K. thought the guy's jeans were either a light gray or a light blue. He was playing with his hands and putting them in his hair, and rubbing his hands, and putting them in his pockets. The guy was wearing shoes on the beach. His skin tone was a whiter tone, a bit pale. M.K. might have seen the guy at the beach before, but she was unsure. She had never talked to the guy. The guy stared at the girl on the computer but then looked in M.K.'s direction. The guy kept walking towards M.K.'s area and sat down by a bush about a car length and a half from M.K. At some point, M.K. turned over and laid on her belly. As soon as M.K. turned over, she felt a hand cover her mouth and pull her head up. That's when M.K. saw a knife and it started stabbing her neck. M.K. tried to block with her left hand and tried to grab the knife with her right hand. There was a lot of pressure on her lower back, so when M.K. was squirming she could not get up. M.K. felt like she was stabbed about 15 times. The last stab, the guy held the knife in M.K.'s neck longer before pulling it out. Then the guy pushed her head back down into the sand and M.K. felt the pressure get off her back. M.K. stood up holding her neck. M.K. looked to the right and saw the person who stabbed her running away; he had brown poufy curly hair, white skin, a white t-shirt and jeans. M.K. remembered the guy was wearing a t-shirt and jeans because she found it odd he was wearing that clothing at the beach. She remembered his dark poufy hair and his really thick eyebrows. M.K. went back to the left where the girl with computer was and asked for help.
>
> 2. [Describing mentoring of Willis by Corporal Motas]
>
> 3. On July 9, 2020, the day following M.K.'s attack, police recovered surveillance video footage from 4671 Kahala Avenue, which was in close proximity to the location of M.K.'s stabbing. That surveillance video captured events at an adjacent beach right-of-way on July 8, 2020 at about 1:26 p.m. That surveillance video depicted a person of interest with medium length dark hair, a white t-shirt, tan pants, and dark shoes with markings on the side walking from Kahala Avenue towards Kahala beach . . . .

---

[7] We reject Willis's contention in his Reply Brief that by challenging the Circuit Court's evaluation of Kaneaiakala factors 2, 4, 6, 8, 10, and 11, which the Circuit Court addressed in COLs 13, 17, 21, 23, 27, and 29, respectively, Willis challenged the Circuit Court's FOFs. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4). Additionally, Willis makes no argument that any specific FOF is clearly erroneous. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

> 4.[-6. Describing, among other things, additional surveillance video footage recovered by the police]
>
> 7. On July 10, 2020 at about 8:47 p.m., Todd Kalahiki ("**Todd**") was with M.K. at the Queen's Medical Center's Intensive Care Unit. Todd is M.K.'s father. M.K. was unable to speak and unable to use her hands due to the injuries that she sustained in the stabbing. Todd received a text message on his cellular phone from an auntie that contained a surveillance video obtained through social media of a possible suspect. Todd showed M.K. the video on his phone. When Todd showed M.K. the video of the stabbing suspect, she mouthed the word "maybe." The video that Todd showed M.K. was the surveillance video footage from 4671 Kahala Avenue. Todd's auntie is not a police officer or a law enforcement officer. The police never directed Todd to show that video to M.K.
>
> 8. [Describing, among other things, additional surveillance video footage recovered by the police]
>
> 9. On July 11, 2020 at about 2:30 p.m. HPD Detective Neil Pang and two other detectives met with M.K. and conducted a blind sequential photographic lineup at the Queen's Medical Center's Intensive Care Unit. M.K. could not talk. She wiggled her right foot to answer "yes," she wiggled her left foot to answer "no," and she blinked to answer "maybe." M.K. could not positively identify anyone in the blind sequential photographic lineup.
>
> 10. After the sequential photographic lineup, Detective Pang conducted an interview with M.K. M.K. indicated that on July 8, 2020 at 1:45 p.m. she was at the beach. M.K. further indicated that she had been at that beach more than twenty times. M.K. indicated that she was laying on her stomach with her feet facing the ocean and her head facing a wall. M.K. related she had seen the man that attacked her three or four times in the area but had never spoken to the man or had any contact with the man. She related that the man had a white short sleeve t-shirt on and that he was wearing pants. She believed his pants were light blue. She related that the man sat down about ten feet away and was to her left as she was laying down. M.K. related that as she was laying on her stomach looking at her phone, the man jumped on her back and stabbed her. She related that the man covered her mouth with one hand and stabbed her neck maybe five times, maybe more.
>
> 11. At the conclusion of that approximately thirty minute long interview, M.K. asked Todd, her father, to come into her hospital room and show the police the video that Todd showed M.K. the day before (July 10, 2020). At that time, M.K. communicated to the police that the man with medium dark hair, a white t-shirt, tan pants, and dark shoes depicted in the video was the person that stabbed her. The police never instructed Todd to show M.K. any surveillance video or conduct any investigation related to M.K.'s stabbing.
>
> 12. [Describing, among other things, additional surveillance video footage obtained by the police]

(Record citations omitted; emphasis added.)

Based on these FOFs, the Circuit Court concluded that constitutional due process guarantees were not implicated by

M.K.'s identification of Willis as her assailant, because the identification did not result from any improper or suggestive conduct by the police, *i.e.*, from any "state action." The Circuit Court also concluded that even if a pretrial review of reliability and admissibility were required, the procedure by which M.K. identified Willis was reliable and not the product of an improperly suggestive procedure. Finally, the Circuit Court concluded that even if the identification was the result of an impermissibly suggestive procedure, the identification was still sufficiently reliable for presentation to the jury under the totality of the circumstances, based on the court's assessment of: (1) the thirteen factors set forth in Kaneaiakala and Hawaiʻi Standard Jury Instruction 3.19 regarding show-up identifications; and (2) the effect of the suggestiveness of the identification procedure on the reliability of the identification.

Willis does not dispute the Circuit Court's findings that the police did not direct Todd to show M.K. the video at issue and that Todd's auntie, who supplied Todd with the video, is not a police officer. Nevertheless, Willis contends that M.K.'s identification of Willis arose from the functional equivalent of a police show-up because only one person was depicted in the video, it contains a date and time stamp immediately preceding the attack, and the State adopted M.K.'s identification from the video after she could not make an identification from the blind sequential photographic lineup that police showed her.

We assume without deciding the "state action" issue that M.K.'s identification of Willis was obtained through an impermissibly suggestive procedure that was subject to the admissibility requirements established in Kaneaiakala. We therefore review the Circuit Court's evaluation of the Kaneaiakala factors, applying the clearly erroneous standard to related factual determinations made by the Circuit Court and the right/wrong standard to the court's conclusions of law. See 145 Hawaiʻi at 240, 450 P.3d 770.

Willis challenges the Circuit Court's evaluation of Kaneaiakala factors 2, 4, 6, 8, 10, and 11 as to M.K.'s

identification, which correspond to COLs 13, 17, 21, 23, 27, and 29, respectively. We address each of the Kaneaiakala factors below, as Willis appears to argue that the Circuit Court discounted or disregarded the challenged factors in relation to others in making its totality-of-the-circumstances determination.

**1. Opportunity to Observe (COLs 11 and 38)**

The Circuit Court found that M.K. had an opportunity to observe her assailant both before and after the attack, and set forth the details of M.K.'s observations at those times. In sum, "M.K. saw the guy that stabbed her both before and after the stabbing; she clearly remembered aspects of the guy's attire, his distinctive hairstyle, and his skin tone. She saw the guy from a relatively close distance in an area with ample lighting; it was the middle of the day."

Willis does not dispute this evaluation of factor 1.

**2. Stress at Time of Observation (COL 13)**

The Circuit Court found that M.K. was under some stress before the attack and under immense stress during and after the attack. Willis contends, without elaboration, that the Circuit Court "improperly discounted" this factor.

It appears, however, that the Circuit Court considered this factor and ultimately determined that M.K. clearly observed her assailant before the attack, as well as seeing him flee after the attack, findings that are supported by the testimony adduced at the motion to suppress hearing. We "will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." Kaneaiakala, 145 Hawaiʻi at 240, 450 P.3d at 770 (quoting State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996)).

**3. Ability to Describe the Person (COL 15)**

Willis does not dispute the Circuit Court's finding that it was "unclear to what extent M.K. could provide a description of the person that stabbed her[,]" given the effects

of her wounds, and she was finally able to communicate to the police that her assailant was wearing a white t-shirt and pants.

**4. <u>Extent to Which Willis Fit the Description</u> (COL 17)**

The Circuit Court found that Willis was wearing a white t-shirt and long pants in the various surveillance videos, and it was "difficult to evaluate M.K.'s description beyond that because it was very difficult for her to communicate with the police." Willis contends that the Circuit Court "disregarded" that M.K. provided a description of Willis "that was somewhat at odds (blue jeans vs. khaki pants) with what was depicted in surveillance videos . . . ."

However, the record does not establish that the Circuit Court failed to consider this fact in evaluating the totality of the circumstances. Indeed, the court acknowledged in COL 15 that M.K. "believed the man's pants were light blue."

**5. <u>Cross-Racial or Ethnic Identification</u> (COL 19)**

Willis does not dispute the Circuit Court's finding that it was unclear to what extent M.K.'s identification of Willis was cross-racial.

**6. <u>Capacity to Make an Identification</u> (COL 21)**

The Circuit Court found that M.K. "had the capacity to make an identification." Willis disagrees, arguing that "[t]here was evidence that she was under the influence of drugs and had just suffered life-threatening injuries and significant blood loss." Willis argues, without any citation to the record, that M.K. was "under the influence of methamphetamine and benzodiazepines which would affect both her ability to perceive and to remember events."

The record does not establish, however, that the Circuit Court failed to consider these alleged factors in evaluating the totality of the circumstances. Although M.K. was told at the hospital that a report on her urine sample showed traces of methamphetamine and benzodiazepine, there was no evidence presented that M.K. was under the influence of drugs to

an extent that would affect her ability to perceive and remember the events surrounding the attack. There was also no evidence presented that M.K.'s injuries and blood loss impaired her ability to perceive events. Accordingly, the court found in COL 38 that "[t]here is no evidence that M.K. was impaired at the time that she observed the guy that stabbed her." Based on our review of the record, this finding is not clearly erroneous.

**7. <u>Ability to Identify Other Participants</u> (COL 22)**

Willis does not dispute the Circuit Court's conclusion that this factor is inapplicable to M.K.

**8. <u>Ability to Identify Willis in a Lineup</u> (COL 23)**

The Circuit Court found that M.K. could not identify anyone in the photographic lineup that she reviewed on July 11, 2020. Willis contends, without elaboration, that the court "erroneously discounted" this factor.

However, the record does not establish that the Circuit Court failed to consider this factor, as evidenced by COL 23 itself, or otherwise "discounted" this factor in evaluating the totality of the circumstances.

**9. <u>Period of Time Between the Stabbing and the Identification</u> (COL 25)**

Willis does not dispute the Circuit Court's finding that M.K.'s identification of Willis occurred three days after the stabbing and that this delay may have been due to the extent of M.K.'s injuries and her resulting hospitalization.

**10. <u>Prior Contacts</u> (COL 27)**

The Circuit Court found that prior to July 8, 2020, "M.K. had seen the guy that stabbed her three or four times in the area around the beach but had never spoken to the man or had any contact with the man." Willis contends, without elaboration, that the court "disregarded" this factor.

However, the record does not establish that the Circuit Court failed to consider this factor, as evidenced by COL 27 itself, in evaluating the totality of the circumstances.

11. **Certainty of the Identification** (COL 29)

The Circuit Court found that: (a) on July 11, 2020, M.K., doing her best to communicate with her injuries, informed the police that the man depicted in the video shown to her by Todd was the person that stabbed her; and (b) at the later suppression hearing, M.K. testified that when she made the identification, the person depicted in the video looked like the person that stabbed her. Willis contends that the Circuit Court "disregarded" that M.K. "was uncertain . . . when she was [first] shown [the video by Todd] and the sequential photographic line-up."

However, the record does not establish that the Circuit Court failed to consider these facts. In FOF 7, the Circuit Court found that when Todd initially showed M.K. the video at the hospital, she mouthed the word "maybe." In FOF 9, the Circuit Court found that when the photographic lineup was conducted on July 11, 2020, she could not positively identify anyone. Nothing in the record indicates that the Circuit Court failed to consider these facts in evaluating the totality of the circumstances.

12. **Identification By Own Recollection** (COL 31)

Willis does not dispute the Circuit Court's finding that "[b]ased on M.K.'s credible testimony, her identification of the person depicted in the surveillance video was the product of her own recollection."

13. **Any Other Evidence** (COL 33)

Willis does not dispute the Circuit Court's conclusion that this factor does not appear to be applicable.

14. **Effect of Suggestiveness** (COL 35)

The Circuit Court found that the police themselves did not employ any suggestive identification procedures, because Todd was acting on his own accord in showing M.K. the video, and there was no evidence that Todd encouraged or pressured M.K. to

identify the person depicted in the video. Although Willis challenges the identification as the functional equivalent of a police show-up, he does not contest the court's findings that Todd's auntie was not a police officer, the police did not direct Todd to show M.K. the video, and Todd did not encourage or pressure M.K. to identify the person depicted in the video as her assailant. The Circuit Court properly considered these factors in evaluating the effect of the suggestiveness of the procedure used to obtain M.K.'s identification of Willis.

The Circuit Court then assessed the "dispositive" Kaneaiakala factors that contributed to the court's totality-of-the-circumstances determination that M.K.'s identification was sufficiently reliable for presentation to the jury. Based on our review of the evidence adduced at the motion to suppress hearing, we conclude that the Circuit Court did not clearly err in making this determination. See 145 Hawai'i at 241, 450 P.3d 771.

### C. Prosecutorial Misconduct

Willis contends that the DPA engaged in multiple acts of misconduct that violated Willis's constitutional right to a fair trial. We focus on one set of statements in the DPA's closing argument that we find dispositive. Willis argues that the DPA "committ[ed] deliberate misconduct by arguing to the jury in closing, without evidence or basis in the record," that: (1) after the attack on M.K., Willis was at the white sink depicted in State's Exhibit 4, washing blood off his hands and face and white t-shirt;[8] and (2) Willis's white t-shirt was blood stained when he returned to Niu Valley some three hours after the attack.

During closing arguments, the DPA in fact made the following statements:

> Taylor Gray said when she saw the man who was on [M.K.'s] back get up, she took a look at him, she saw him,

[8] State's Exhibit 4 was the surveillance video footage recovered by the police from 4635 Kahala Avenue, which was close to where M.K. was stabbed. At about 1:46 p.m. on the day of the attack, "the surveillance video depicted a light skinned person with medium length curly hair, shirtless, tan pants, and shoes running from the direction of the beach to a white utility work sink. The light skinned person appeared to wash himself in the work sink and then ran away." (Record citations omitted.)

> saw part of him, but she noticed that there was something on his white shirt. She didn't explain what it was, but there was something on the white shirt. But up to this point, there's been nothing on the defendant's white shirt. So what could it be? Blood? There was plenty of blood. Sand? It's on a beach. We don't know.
>
> But if you're the defendant, what do you do if you have blood on your shirt? What do you do if you have blood on your hands?
>
> State's Exhibit 4.
>
> Ladies and gentlemen, this is State's Exhibit 4. And the time is 1:46:22. First of all, before we go, notice defendant is here. No shirt because it's soiled. Pants, light colored pants. Shoes, looks like some sort of marking on the side of it.
>
> Okay. Please run it to 1:46:43 and then stop it. Okay. Stop.
>
> Notice something in his left hand. Looks white. Most likely it's his shirt.
>
> Go to 45 please.
>
> You notice he's turning, leaving the sink, and he's got something behind his back curled up. It's white. State submits that's his shirt. So we don't know whether he washed the shirt at the sink, but <u>we know from Edward Leal that he washed his hands and his face because he had blood on them</u>.

(Emphasis added.) Minutes later, the DPA showed the jury State's Exhibit 6, the surveillance video footage recovered from 5605 Haleola Street. The DPA argued:

> Shirt is soiled. So what happened was that after the defendant arrived to the beach with a clean white [t]-shirt, after he stabbed [M.K.], he got blood on it, possibly sand. Tried to wash it out, and disappeared for two hours.

Although Willis did not object during trial to any of these statements, in prosecutorial misconduct cases, "there is no difference between the plain error and harmless beyond a reasonable doubt standards of review." <u>State v. Hirata</u>, 152 Hawaiʻi 27, 31, 520 P.3d 225, 229 (2022) (citing <u>State v. Riveira</u>, 149 Hawaiʻi 427, 431 n.10, 494 P.3d 1160, 1164 n.10 (2021)). "[O]nce the defense establishes misconduct - objection or no objection - appellate review is the same: 'After considering the nature of the prosecuting attorney's conduct, promptness or lack of a curative instruction, and strength or weakness of the evidence against the defendant, a reviewing court will vacate a conviction if there is a reasonable possibility that the conduct

might have affected the trial's outcome.'" Id. (quoting Riveira, 149 Hawaiʻi at 431, 494 P.3d at 1164).

In applying this standard of review, we first address whether the DPA's statements constituted misconduct. During closing argument, a prosecutor "is permitted to draw reasonable inferences from the evidence." State v. Basham, 132 Hawaiʻi 97, 112, 319 P.3d 1105, 1120 (2014) (ellipsis omitted) (quoting State v. Clark, 83 Hawaiʻi 289, 304, 926 P.2d 194, 209 (1996)). However, [p]rosecutors are . . . forbidden from introducing new information or evidence in closing argument." Hirata, 152 Hawaiʻi at 33, 520 P.3d 231 (citing Basham, 132 Hawaiʻi at 113, 319 P.3d at 1121 ("Closing arguments are not the place to introduce new evidence outside the safeguards of the Hawaiʻi Rules of Evidence.")); see also State v. Yip, 92 Hawaiʻi 98, 111, 987 P.2d 996, 1009 (App. 1999) ("In closing arguments, it is improper to refer to evidence which is not in the record or has been excluded by the court.").

Here, the DPA went well beyond drawing reasonable inferences from the evidence in arguing to the jury that, after the attack on M.K., Willis was at the white sink washing blood off his hands and face. We first note that at trial, Leal, who testified that he saw a man washing his face and arms in the sink sometime between one and two p.m. that day, did not identify Willis as the person depicted in Exhibit 4, and Corporal Motas, who had mentored Willis, was asked but was not able to identify Willis as the person depicted in Exhibit 4. In any event, Leal did not testify that Willis "washed his hands and his face because he had blood on them." (Emphasis added.) He stated only that the man he saw that day "was washing his arms, here, and also wash[ed] his face a little." The DPA's statement to the jury thus referred to evidence of blood on Willis that was not in the record and, indeed, misrepresented evidence that was in the record. This misstatement constituted misconduct.

The DPA's statement minutes later, "So what happened was that after [Willis] arrived to the beach with a clean white [t]-shirt, after he stabbed [M.K.], he got blood on it," piggybacked on the misstatement of Leal's testimony and also

introduced new evidence of blood in closing argument. Based on our review of the record, it appears that the State presented no evidence that the stains on the white t-shirt depicted in the videos at issue were or even appeared to be blood. We thus conclude the DPA's statement that "after he stabbed [M.K.], [Willis] got blood on [his t-shirt]" also amounted to misconduct.

We turn now to determining whether there is a reasonable possibility that this misconduct "might have affected the trial's outcome." Hirata, 152 Hawaiʻi at 33, 520 P.3d at 231 (quoting Riveira, 149 Hawaiʻi at 431, 494 P.3d at 1164). We consider three factors in applying this standard: (1) the nature of the DPA's misconduct; (2) the promptness or lack of a curative instruction; and (3) the strength or weakness of the evidence against Willis. Id. at 34, 520 P.3d at 232.

In considering the first factor, we note again that the DPA misrepresented Leal's testimony and referred to evidence of blood on Willis and on his shirt that was not in the record. This blood evidence was woven into the State's case to incriminate Willis, and clearly could have been viewed by the jury as circumstantial evidence that Willis stabbed M.K. The harm from this inference "cannot be overstated" given that the State presented no evidence that the stains were blood and, if blood, that it was M.K.'s blood. State v. Pitts, 146 Hawaiʻi 120, 133, 456 P.3d 484, 497 (2019). The seriousness of the misconduct is also exacerbated by the State's presumed knowledge that: (1) no blood was recovered from the white sink, which had been seized and analyzed by the HPD; and (2) a white shirt belonging to Willis had been suppressed, having been seized in an illegal search, and when analyzed, was found not to have blood on it.[9]

[9] Defense counsel attested to these facts in a declaration filed in the Circuit Court, and the State does not dispute them. Instead, the State argues that there is no evidence that the white shirt seized in the illegal search was the same shirt Willis was wearing when he allegedly stabbed M.K., and that even if it was, it could easily have been washed clean of any DNA evidence before it was discovered in the illegal search. This misses the point. The State presented no evidence that the stains on the white t-shirt depicted in the videos were blood. By waiting until closing argument to present this "evidence" to the jury, the State precluded Willis from confronting it. Further, because the illegally seized shirt was suppressed, the State could not offer explanations as to why it did not contain evidence of blood.

See Willis, 150 Hawaiʻi at 238, 241, 500 P.3d at 423, 426 (affirming suppression of the shirt).

We next consider whether the court gave prompt curative instructions. Riveira, 149 Hawaiʻi at 433, 494 P.3d at 1166. Here, the defense did not object to the challenged statements by the DPA, and the Circuit Court did not step in and give a curative instruction. The State appears to argue that the Circuit Court's general instruction to the jury to consider only the evidence presented, and that statements by lawyers are not evidence, cured any prejudice caused by the DPA's challenged statements. However, the general instructions given to the jury did not neutralize the DPA's misconduct. See id.

Finally, we conclude that the evidence of Willis's guilt, though sufficient to support the verdict (see infra), was not overwhelming. No forensic evidence was presented of blood found on Willis or the clothing he was wearing. Because M.K. was the only person that positively identified Willis as her assailant, the case depended heavily on the credibility of M.K. These considerations weigh against a finding of harmlessness. See State v. Pitts, 146 Hawaiʻi 120, 133, 456 P.3d 484, 497 (2019); State v. Underwood, 142 Hawaiʻi 317, 329, 418 P.3d 658, 670 (2018) ("When a conviction is largely dependent on a jury's determination as to the credibility of a complainant's testimony, we have held that the evidence of the offense is not so 'overwhelming' that it renders the prosecutor's improper statements harmless beyond a reasonable doubt.").

Based on our evaluation of the three relevant factors, we conclude that the DPA's improper statements about blood on Willis and his shirt were not harmless beyond a reasonable doubt. Accordingly, there is a reasonable possibility that the misconduct may have contributed to Willis's conviction, and the conviction must be vacated.

### D. Motions for Judgment of Acquittal and for New Trial

Willis contends that the Circuit Court erred in denying his motion for judgment of acquittal because "[n]o reasonable juror could fairly conclude guilt beyond a reasonable doubt from

the evidence presented by the State even when viewed in the light most favorable to the State[.]" He similarly contends that the Circuit Court erred in denying his motion for a new trial because "the conviction was not supported by substantial or sufficient evidence" and the court ignored the alleged prosecutorial misconduct. Willis argues that the State presented no evidence of motive for the attack, did not recover a weapon used in the attack, and presented no forensic evidence linking Willis to the attack. He also challenges the reliability of M.K.'s identification of Willis as her assailant.

We review a ruling on a motion for judgment of acquittal by applying the same standard as the trial court, namely, "whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." State v. Angei, 152 Hawaiʻi 484, 492, 526 P.3d 461, 469 (2023) (quoting State v. Jhun, 83 Hawaiʻi 472, 481, 927 P.2d 1355, 1364 (1996)). "The granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." State v. Williams, 149 Hawaiʻi 381, 391, 491 P.3d 592, 602 (2021).

In order to convict Willis of attempted murder in the second degree, the State was required to prove beyond a reasonable doubt that he intentionally engaged in conduct that was a substantial step in a course of conduct intended or known to cause M.K.'s death. See HRS §§ 705-500, 707-701.5. The primary dispute at trial centered on identification of Willis as M.K.'s assailant. "The testimony of one percipient witness can provide sufficient evidence to support a conviction." State v. Pulse, 83 Hawaiʻi 229, 244, 925 P.d 797, 812 (1996) (citing Eastman, 81 Hawaiʻi at 141, 913 P.2d at 67). Appellate courts "give 'full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.'" Angei, 152 Hawaiʻi at 492, 526 P.3d at 469 (quoting Juhn, 83 Hawaiʻi at 481, 927 P.2d at 1364).

M.K., who appears to be the only eyewitness who saw her assailant in close proximity both before and after the attack, identified the person depicted in Todd's video as her attacker, and later identified Willis at trial. The surveillance videos presented by the State largely corroborated M.K.'s description of her attacker.

Viewing the evidence in the "light most favorable to the prosecution and in full recognition of the province of the trier of fact," there was sufficient evidence to support a prima facie case so that a reasonable mind might fairly conclude that Willis was M.K.'s assailant and was guilty beyond a reasonable doubt of attempted murder in the second degree. See Angei, 152 Hawaiʻi at 492, 526 P.3d at 469. The Circuit Court's denial of Willis's motion for judgment of acquittal was not erroneous.

As to the denial of Willis's motion for a new trial, the evidence, when viewed in the light most favorable to the State, was sufficient to support Willis's conviction. However, the Circuit Court erred in denying Willis's motion for a new trial based on prosecutorial misconduct, for the reasons previously discussed. See Williams, 149 Hawaiʻi at 397, 491 P.3d at 608.

## III. Conclusion

For the reasons discussed above, we vacate the Amended Judgment of Conviction and Sentence, entered on July 20, 2022, in the Circuit Court of the First Circuit, and remand this case for a new trial.

On the briefs:

Eric A. Seitz,
Della A. Belatti,
Jonathan M.F. Loo, and
Kevin Yoklen
for Defendant-Appellant

Brian Vincent,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge